**UNITED STATES of America,**
**Appellee,**

v.

**William E. SULLIVAN, Appellant.**

**No. 174, Docket 32520.**

United States Court of Appeals
Second Circuit.

Argued Nov. 13, 1968.
Decided Jan. 23, 1969.

James T. B. Tripp, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., John H. Doyle, III, and Charles P. Sifton, Asst. U. S. Attys., on the brief), for appellee.

Phylis Skloot Bamberger, New York City, (Anthony F. Marra, New York City, on the brief), for appellant.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, on trial to the court, jury waived, Edward C. McLean, Judge, convicting appellant of violation of 18 U.S.C. § 495 by forging and uttering a check of the United States, and sentencing him to two concurring terms of one year's imprisonment. We find no error and affirm the judgment.

The issues on appeal are Sullivan's competence to stand trial, and the existence of the requisite criminal intent under the statute. The testimony of the government's witnesses established that appellant forged a United States government check made out to Sue Vecera, Columbia, Pennsylvania, as payee, and that he attempted to cash the check at a Greyhound Bus ticket window at the Port Authority Bus Terminal in Manhattan.

On the afternoon of December 6, 1967, appellant asked ticket agent Janthor to cash the government check, which was endorsed at an incorrect place on the reverse side. In response to Janthor's request for identification, appellant first stated that he had none and then said that he was sales manager of a newspaper and that the check was his wife's, showing some pink slips which had the name of no person thereon. Janthor testified that although appellant was sloppy and dirty and looked like a derelict, appellant's speech was not slurred, he did not stagger, and he "wasn't what you'd call drunk." Detective Pagano, who watched appellant enter the bus terminal, testified that Sullivan walked normally, and was responsive and coherent during a subsequent conversation in the squad room where he was arrested for loitering. Detective McCarroll corroborated Pagano's opinion that Sullivan was not drunk, although he smelled of alcohol, adding that on the few occasions McCarroll had seen appellant previously, he had been intoxicated.

Appellant, testifying on his own behalf, stated that he had been treated with paraldehyde at Bellevue several times to aid his drinking problem. He testified further that he did not recall a conversation with Pagano nor going to the squad room, and stated that he did not attempt to cash a check. On cross-examination Sullivan testified that his poor memory was due to his being an alcoholic.

Prior to trial, at the request of the defense, appellant was committed for psychiatric examination at Bellevue Hospital on the question of whether he was competent to stand trial. Dr. Jason Miller's report of April 4, 1968[1] stated that

---

1. Report of Jason Miller, M.D., Dated April 4, 1968

(Letterhead of Bellevue Hospital Center)

April 4, 1968

Honorable Edward Weinfeld
United States District Court
Southern District of New York
207 U. S. Federal Court Bldg.
Foley Square 7, New York

 Re: William E. Sullivan

Honorable Sir:

The above-named, charged with Forgery, has been committed to this hospital for examination as to his mental condition on April 2, 1968.

*History*: The patient is a 35-year old male who states that he has been an alcoholic for the past 5 years. Upon questioning, he claims that his

he diagnosed Sullivan to be a chronic alcoholic, with a spotty memory and poor insight and judgment. The report also indicated that Sullivan denied any recollection of the charge, but wished to stand trial to prove his innocence.

Pursuant to a court order of April 19 for an additional examination, a report of Dr. Goldin was filed stating that Sullivan "was oriented to time, place and person. He was able to articulate the nature of the legal charges which have been made against him and demonstrated an understanding of the legal proceedings in which he is currently involved." The report, dated May 3, 1968,[2] concluded

memory is very poor due to his alcoholism, and knows nothing of his charge of forging a check. He was born in El Paso, Texas, spent part of his childhood in Texas, and part in Mississippi, with his grandparents; his parents were divorced when he was 14 years old. He was married 11 years ago, for five years, and was divorced at age 29, and he has not seen his wife and 2 children since then. He states that his wife has re-married and he does not know her whereabouts. He has been a heavy drinker for the past 5 years. He has never been hospitalized nor received any help from the AA. He claims that he started to drink after he was mugged and had his jaw broken. Although he has never been hospitalized, he states that he came to Bellevue Emergency Ward for paraldyhyde. He denies homosexuality, and he has not had any dates with women since November 1967. Upon repeated questioning he denies any recollection of the charge, but states that he wishes to stand trial to prove his innocence.

*Examination* reveals patient to be oriented for time and place, his affect is restricted, his memory spotty, he has no overt psychotic ideation. He shows some evidence of loss of abstract attitude. No preoccupations noted, insight and judgment are poor.

*Diagnostic Impression*: Without Psychosis; Alcohol Addiction, Chronic.

Respectfully yours,

/s/ Jason Miller, MD
Jason Miller, MD
Qualified Psychiatrist

———◆———

2. Report of Gurston D. Goldin, M.D., Dated May 3, 1968

Gurston D. Goldin, M.D.
166 East 63rd Street
New York, N. Y. 10021

———

TEmpleton 8–7223

May 3, 1968

Hon. Milton Pollack
United States Judge
Southern District of New York
Foley Square
New York, N. Y. 10007

Dear Judge Pollack:

Pursuant to your court order of April 19, 1968, I conducted a psychiatric examination of Mr. William E. Sullivan at Federal Detention Headquarters for the purpose of evaluating his psychiatric status with regard to his mental competency to understand the charges against him and to assist in his own defense.

Mr. Sullivan was seen on May 2, 1968 in a psychiatric interview in which he was oriented to time, place and person. He was able to articulate the nature of the legal charges which have been made against him and demonstrated an understanding of the legal proceedings in which he is currently involved. He is capable of distinguishing between the content of inner mental experience and external reality and no clinical evidence for delusional or hallucinatory symptoms was obtained. His capacity for ab-

that appellant is "capable of understanding the charges against him and of assisting in his own defense." Dr. Goldin submitted an additional report on May 10, 1968,[3] in response to a request by the United States Attorney's Office for a stract thought and conceptual mental activity is limited but is consistent with his educational and cultural background and with the mental disorder from which he suffers. Although psychiatric examination reveals an underlying emotional disorder and psychological problem with a history of maladjustment emotionally and a maladaptive pattern of behavior, this finding has no bearing on the question of mental competency directed to this examination by your court order.

Psychiatric examination of Mr. Sullivan produced clinical findings which support the conclusion that he is, in terms of mental competency, capable of understanding the charges against him and of assisting in his own defense.

Sincerely yours,

GURSTON D. GOLDIN

Gurston D. Goldin, M.D.

3. Supplemental Report of Gurston D. Goldin, M.D., Dated May 10, 1968

May 10, 1968

Hon. Edmund L. Palmieri
United States Judge
Southern District of New York
United States Court House
Foley Square
New York, N. Y. 10007

Dear Judge Palmieri:

I am writing to you at the request of Mr. James Brannigan, Assistant United States Attorney in the Southern District of New York, in regard to the psychiatric examination of Mr. William E. Sullivan that I conducted on May 2, 1968 at Federal Detention Headquarters on the order of Judge Milton Pollack. 68 Cr. 203. This examination, a report on which was sent to Judge Pollack on May 3, was made for the purpose of evaluating Mr. Sullivan's psychiatric status with regard to his mental competency to understand the charges against him and to assist in his own defense.

Psychiatric examination of Mr. Sullivan produced clinical findings which supported my conclusion that he is, in terms of mental competency, capable of understanding the charges against him and of assisting in his defense. At this time, I have been asked to comment more fully on the question of his memory as it presented itself on examination.

Mr. Sullivan when questioned directly about the act he is alleged to have committed, could not recall the commission of such an act. However, by history on his own admission he was an alcoholic and there is the possibility, not within my professional competence to ascertain, that he suffered from an altered state of consciousness at the time with consequent amnesia for any behavior at such time. Such fact-finding is beyond my professional competence. However, on clinical examination I did not find any gross memory impairment and do not believe that a general memory deficit is present that would render this individual incompetent. No evidence was clinically obtained during my examination that would establish an organic brain syndrome as a clinical state in this man. Aside from his inability to recall on request the event in question, his recollection of the past was not grossly damaged. Although he suffers from an underlying mental and emotional disorder, with a history of psychological disturbance and maladjustment, this finding, as I stated on May 3 in my report, has no bearing on the question of mental competency directed to my examination.

Sincerely yours,

GURSTON D. GOLDIN, M.D.

diagnosis on the issue of Sullivan's memory of events:

"Mr. Sullivan when questioned directly about the act he is alleged to have committed, could not recall the commission of such an act. However, by history on his own admission he was an alcoholic and there is the possibility, not within my professional competence to ascertain, that he suffered from an altered state of consciousness at the time with consequent amnesia for any behavior at such time. Such fact-finding is beyond my professional competence. However, on clinical examination, I did not find any gross memory impairment and do not believe that a general memory deficit is present that would render this individual incompetent. * * * Aside from his inability to recall on request the event in question, his recollection of the past was not grossly damaged."

Based on these reports, appellant was deemed competent to stand trial. The reports, as well as the testimony of the witnesses, were also relied upon by defense counsel in a motion, at the close of trial, for a mistrial on the ground that appellant was unable to form the specific intent required by both counts of the indictment. The Court denied the motion.

## I.

 No part of a criminal proceeding may be proceeded with against a defendant who is at the time "insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense * * *" 18 U.S.C. § 4244. The test under the statute is stated in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960):

[The] test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as

factual understanding of the proceedings against him.

The reports and testimony indicate that appellant was in fact competent. Dr. Goldin specifically concluded that Sullivan was capable of understanding and articulating the charges against him and assisting in his own defense.

Appellant contends that his lack of memory as to the relevant events made him unable to confer with counsel and to assist in the preparation of a defense in any meaningful sense. A court is unable, however, to probe Sullivan's mind to determine the extent of his memory of the facts in this case, and must determine the issue from the evidence of his behavior and the opinions of the expert witnesses. Appellant did not, according to Dr. Goldin, have any gross memory impairment, and it was not found that he was unable to advise his counsel concerning the events of the case as known to him.

 Judge McLean was able to observe Sullivan's condition in court and on the stand at the time of trial. On his own observation, and on the doctors' reports in evidence, he concluded that Sullivan did understand the nature of the proceedings and was able to consult rationally with his attorney. We cannot say on this record that this conclusion was erroneous.

 If in fact he had developed an amnesia preventing his recollection of the events of the day in question, this would not in itself be a complete defense to the charges. There were other witnesses to the events who could and did testify. At the time of trial, Sullivan was capable of understanding the charges and assist in the conduct of the trial. We cannot say that in these circumstances an amnesia for the events in question, if it were found that it actually existed, whether caused by drinking on the day in question or at a later date or dates (Sullivan was out on bail for a period after arrest), or by later trauma, must

constitute a defense to criminal prosecution for acts committed in an apparently sober and competent interlude. Such a loss of memory may call for additional trial safeguards in particular circumstances, as where delay in trial has caused the loss of other evidence, but we are unwilling to hold that it is in all cases an automatic bar to prosecution for a crime amply established by competent evidence on trial. Compare Wilson v. United States, 391 F.2d 460 (1968) (especially Leventhal, J., concurring opinion at 464, 465). And see Comment, Amnesia: A Case Study in the Limits of Particular Justice, 71 Y.L.J. 109, 123 (1961): " * * the universal incidence of amnesia makes it impossible to consider amnesiacs as a unique class and requires instead that judicial remedies be based upon an evaluation of the relative disadvantages under which a particular defendant is operating."

█ The most that can be said is that this unfortunate 35-year old man had in some five years of alcoholic addiction progressed to a panhandling stage where he was willing to take part in illegal activity to support his addiction. He may or may not have also become so impaired in memory that he was actually unable to recall the episode for which he was on trial. Neither of these possibilities, however, creates a bar to his conviction if he was at the time of the offense capable of forming the requisite criminal intent, and at the time of trial competent to understand the nature of the proceedings against him and consult rationally with counsel.

## II.

██ The statute under which appellant was convicted requires a specific intent in addition to the general *mens rea*. It reads, in relevant part:

§ 495. Whoever falsely * * * forges * * * any * * * writing * * * *for the purpose* of obtaining * * * from the United States * * any sum of money; or

Whoever utters * * * any such false, forged * * * writing, *with intent* to defraud the United States, knowing the same to be false * * * forged * * *.—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

The general mental element of criminality requires both knowledge and understanding of the relevant conduct and of the natural consequences of the conduct. See United States v. Freeman, 357 F.2d 606, 622 (2 Cir. 1966); Model Penal Code § 2.08(4) (Proposed Official Draft, 1962). Appellant does not argue that he lacked substantial capacity to appreciate the wrongfulness of his conduct or conform it to the requirements of law at the time of such conduct.

Appellant does contend, however, that the specific fraudulent intent required by the statute—i. e., "for the purpose of obtaining or receiving * * * any sum of money" and "with intent to defraud" —was not established by the government. Ross v. United States, 374 F.2d 97, 101 (8 Cir. 1967). In particular, appellant maintains that his performance was doomed to failure, that appellant must have known this, and his lack of concern for the success of his venture is sufficient to rebut the usual inference of intent arising from the prohibited acts.

█ The presence of a fraudulent intent is rarely susceptible of direct proof, and must instead be established by legitimate inferences from circumstantial evidence. These inferences are based on the common knowledge of the motives and intentions of men in like circumstances. Connolly v. Gishwiller, 162 F.2d 428, 433 (7 Cir.), cert. denied 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947). Although appellant's dress, attitude, and behavior when uttering the check he had forged may have been "sloppy and unconvincing," the evidence clearly indicates that he did intend to cash the check. Sullivan told both ticket

agent Janthor and Detective Pagano that he wished to cash the check, and that it was his "wife's." In another version he stated that an unknown man promised him "a pound" to cash it. He may have wanted the money to obtain alcohol to satisfy his craving, but this does not mean that he did not know what he was doing. As the Court said in Walker v. United States, 342 F.2d 22, 27 (5 Cir.), cert. denied 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965):

> When the defendant aided and abetted the forgery of the endorsement on the check described in each count, his purpose was to obtain a sum of money. While it is true that he would receive the money initially from whoever cashed the Treasury check, he was charged with knowledge that the United States would suffer the ultimate loss. Since the defendant is presumed to have intended to do what he actually did, it follows that his participation in the crime was for the purpose of obtaining money from the United States * * *.

The above considerations are also relevant to the uttering count. Appellant's "intent" to defraud the United States was established by evidence demonstrating that appellant forged the government check and uttered the same knowing it to be forged, and with the intent to obtain money from the United States. Sullivan's false exculpatory statements—e. g., that the check was his wife's—were circumstantial evidence of consciousness of guilt. United States v. DeAlesandro, 361 F.2d 694 (2 Cir.), cert. denied 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed. 2d 74 (1966); see United States v. Wilson, 342 F.2d 43, 18 A.L.R.3d 254 (2 Cir. 1965). The inference that appellant intended to defraud the United States is especially strong in light of the evidence establishing the forgery count. See United States v. Galvin, 394 F.2d 228 (3 Cir. 1968).

Nor are we persuaded by appellant's argument that his lack of concern for the success of the venture, evidenced by the sloppy and unconvincing manner in which the crime was committed, militate against finding the requisite intent. As the Court stated in United States v. Jenkins, 347 F.2d 345, 347 (4 Cir. 1965):

> The lack of success of a scheme to defraud is no defense to the charge. The judge, when imposing sentence, may in the exercise of his discretion take into consideration the defendant's success or lack of success, but if the plan itself is inept or its execution bungled the offender is not automatically clothed in a mantle of immunity. The offering of the instrument with intent to defraud is in itself sufficient to constitute a passing or uttering. United States v. Rader, 185 F.Supp. 224, 230 (W.D.Ark.1960), aff'd 288 F.2d 452 (8th Cir. 1961) [citations omitted].

The evidence amply supports Sullivan's conviction of forgery for the purpose of obtaining money from the United States Treasury, and uttering the forged check with the intent to defraud the United States knowing the same to be forged.

Judgment affirmed.

MEDINA, Circuit Judge (dissenting):

I respectfully dissent. In all good conscience I cannot join in affirming this conviction. In my opinion this poor, bedraggled derelict, for many years a chronic alcoholic, should not have been prosecuted. There are and must be times when the strong arm of the law should be stayed out of pure mercy. And I wonder whether, now and then, we do not spin out rules of law with all too fine distinctions of general application, at the expense of that sensitivity to the meting out of justice in the particular case before the Court, which lies at the base of any system of law worthy of the name.