# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1448

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RODNEY ANDREWS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05 CR 56—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED SEPTEMBER 19, 2006—DECIDED DECEMBER 7, 2006

———————

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Rodney E. Andrews is a serial bank robber and long-time drug addict. After Andrews was found competent to stand trial and agreed to a bench trial, the district court found him guilty of robbing a bank. Andrews, however, allegedly suffered from amnesia for the period of time surrounding the robbery. He claims that this rendered him incapable of assisting his attorney in preparing his defense and thus incompetent to stand trial. Because we find that the district court did not abuse its discretion when it declined Andrews' request for a second competency exam and it did not com-

mit clear error when it found Andrews competent to stand trial despite his claimed amnesia, we affirm.

**I.**

On the morning of May 11, 2001, an individual, later identified as Andrews, entered the Anchor Bank in Madison, Wisconsin. He handed a bank teller a small bag from which he pulled out a piece of notebook paper that read: "Fill the bag. I have a gun." Andrews verbally repeated the same to the bank teller as she filled the bag with $1,837.00. He took the bag and immediately fled the scene.

Prior to the alleged robbery, a witness saw a man fitting the description of the bank robber pacing back and forth in front of the Anchor Bank while chain-smoking cigarettes. Surveillance video of the interior of the Anchor Bank taken during the robbery clearly depicted the robber and matched the witness' description of the man pacing and smoking outside of the bank prior to the robbery. A Madison police officer found fresh cigarette butts in the area where the witness saw the man pacing. The cigarette butts were stored as evidence. Three years later, in August 2004, the Madison Police Department sent the cigarette butts to the Wisconsin Crime Laboratory for DNA analysis. A DNA forensic analyst obtained and identified a DNA profile from one of the cigarette butts, which she compared to profiles of known offenders in the Wisconsin and FBI DNA databases. The DNA profile taken from the cigarette butt matched the DNA profile of convicted bank robber Rodney E. Andrews, who had been convicted of robbery in Indiana and had recently been paroled. Law enforcement authorities located Andrews, and with his consent the FBI obtained from him a DNA sample to confirm the

positive match results. The Wisconsin Crime Laboratory confirmed the results to a reasonable degree of scientific certainty.

A grand jury subsequently indicted Andrews on one count of robbing the Anchor Bank in violation of 18 U.S.C. § 2113(a). The government also informed Andrews that he was a suspect in four other bank robberies that occurred between April 27, 2001 and May 11, 2001. Andrews' counsel stated that it was his understanding that the government intended to bring a superseding indictment charging Andrews with all five bank robberies, unless Andrews pleaded guilty to the charged robbery and stipulated to his culpability for the other four. Due to prior convictions, Andrews would be classified as a career offender for sentencing purposes if he was convicted of any one of the other bank robberies.

In advance of the hearing, Andrews' counsel filed a motion under 18 U.S.C. §§ 4241, 4242 and Federal Rule of Criminal Procedure 12.2(c) for an order for Andrews to undergo a psychiatric and psychological examination to determine his present competency and his sanity at the time of the alleged bank robbery. The motion stated that Andrews had been a heavy user of heroin and alcohol at the time of the alleged robberies, and, as a result of his illegal drug and alcohol abuse, he has no present memory of where he was, or what he was doing, during the early to middle part of 2001. Andrews further claimed that he does not remember being in Wisconsin other than the time he spent as an inmate at Federal Correction Initiation in Oxford, Wisconsin, and when the United States Marshals Service transported him to Wisconsin for purposes of this case. The government did not oppose Andrews' motion. Magistrate Judge Stephen L.

Crocker granted Andrews' motion and subsequently ordered the examination.

Andrews was examined at the New York Metropolitan Correctional Center by Dr. Cristina Liberati, a licensed psychologist. In her report dated August 2, 2005, Dr. Liberati concluded that Andrews, at the time of the evaluation, was not suffering from a mental disease or defect. Her report further stated that Andrews was competent to stand trial because he "has a rational and factual understanding of the proceedings against him and he is capable of assisting counsel with his defense." Regarding Andrews' criminal responsibility at the time of the offense, Dr. Liberati concluded that Andrews "did not have a mental illness impairing his ability to appreciate the wrongfulness of his conduct."

After Andrews was found competent to stand trial, he filed a new motion requesting an additional psychological examination. Andrews' second motion was based on his assertion that further examination was warranted because Dr. Liberati did not address specifically the effect of Andrews' claimed lack of memory during the period of the alleged robbery on his ability to assist his counsel. In his second motion, Andrews acknowledged that "the law of the Seventh Circuit does not currently recognize amnesia as a competency or due process issue." In its response, the government conceded, arguendo, that Andrews actually suffers amnesia regarding the events surrounding the robbery, but asserted that Andrews' motion should be denied based on existing precedent in this circuit, specifically *United States v. Stevens*, 461 F.2d 317 (7th Cir. 1972), and *Leach v. Kolb*, 911 F.2d 1249 (7th Cir. 1990). On September 28, 2005, Magistrate Judge Crocker denied Andrews' motion for a second competency exam, stating

that "given the law of this circuit, it does not appear that anything legally useful would be obtained by attempting to pinpoint more precisely any organic basis for Andrews' amnesia."

On November 3, 2005, prior to his trial, Andrews stipulated to the government's evidence against him, including the photographic and DNA evidence, as well as testimony from eyewitnesses and law enforcement personnel. The district court conducted a bench trial, and based on the stipulated evidence adjudged Andrews guilty of robbing the Anchor Bank. The district court later sentenced Andrews to a 151-month term of imprisonment. Andrews appeals.

## II.

On appeal, Andrews argues that his amnesia regarding the period during which the charged crime occurred rendered him unable to assist in his own defense at trial, and thus the district court should have declared him incompetent to stand trial. Andrews also claims that the district court erred in denying his request for a second competency examination and hearing to evaluate the impact of his claimed amnesia on his fitness to stand trial. We consider each issue in turn.

As this court explained in *United States v. Collins*, 949 F.2d 921 (7th Cir. 1991), "[u]nquestionably, due process requires a defendant to be competent to stand trial." *Id*. at 924. To be competent, a defendant must have the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and must] ha[ve] a rational as well as factual understanding of the proceedings against him." *Leach v. Kolb*, 911 F.2d 1249, 1260

(7th Cir. 1990) (internal quotations omitted). Regardless of whether the defendant moves for a competency evaluation, "the due process clause requires the trial judge to inquire sua sponte into a defendant's mental state if events in court imply that the accused may be unable to appreciate the nature of the charges or assist his counsel in presenting a defense." *Timberlake v. Davis*, 409 F.3d 819, 822 (7th Cir. 2005).

In this case, Andrews claims that his amnesia prevented him from assisting his attorney in presenting a defense. Specifically, he argues that he was incompetent because he lacked any memory of the time period surrounding the alleged bank robbery, and thus he could not respond to the evidence presented against him. Andrews acknowledges that this court has held previously that "amnesia is not a bar to prosecution of an otherwise competent defendant," *United States v. Stevens*, 461 F.2d 317, 320 (7th Cir. 1972), but argues that we should revisit that decision. We begin by reviewing our past decision in *Stevens*.

In *Stevens* we considered a factual and legal scenario very similar to this case. The defendant in *Stevens* stated that he had "been a chronic user of an indiscriminate variety of drugs for more than twenty years," and that his years of substance abuse had deprived him of any memory of substantial portions of his life, including the period during which the alleged crime of which he was convicted occurred. *Id.* at 318. The district court ordered a psychiatric examination. *Id.* The defendant was found to understand "the nature and quality of the act with which he was changed and the nature of his defense." *Id.* at 319. On appeal, the defendant argued that the evidence presented at trial of his sporadic amnesia presented a bona fide doubt as to whether he was competent to stand trial,

and that the district court should have conducted, sua sponte, a competency hearing pursuant to 18 U.S.C. § 4241.[1] *Id.* We noted that while a district court is not expressly required to order further examination or a hearing subsequent to a psychiatric report indicating competency to stand trial, it is required to order such an examination "should a bona fide doubt subsequently arise during the trial." *Id.* at 320 (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1965)); *see also Timberlake*, 409 F.3d at 822. Accordingly, the issue on appeal was whether evidence presented at trial regarding the defendant's inability to recall events from his past at the time of trial could render Stevens incompetent to stand trial and trigger the district court's duty to order a second competency hearing.

At the time of the *Stevens* decision, this issue was one of first impression in this circuit. *Stevens*, 461 F.2d at 320-21. However, the Second Circuit had decided a virtually identical case in *United States v. Sullivan*, 406 F.2d 180 (2d Cir. 1969), and this court in *Stevens* relied on the Second Circuit's decision to conclude that "amnesia is not a bar to prosecution of an otherwise competent defendant." *Stevens*, 461 F.2d at 320. As in *Stevens*, the defendant in *Sullivan* claimed that as a result of his substance abuse he suffered from amnesia for the period during which the alleged crime occurred, which "made him unable to confer with counsel and to assist in the preparation of a

---

[1] The provisions currently contained in 18 U.S.C. § 4241, which govern a psychiatric examination to determine the mental competency of an accused after arrest and prior to trial, formerly were contained in 18 U.S.C. § 4244. This change occurred subsequent to our decision in *Stevens*. For clarity, we cite to the current version of the psychiatric examination procedures.

defense in any meaningful sense." *Sullivan*, 406 F.2d at 185 (stating that the defendant suffered from memory loss characteristic of alcoholism). The Second Circuit concluded:

> If [the defendant] had developed an amnesia preventing his recollection of the events of the day in question, this would not in itself be a complete defense to the charge. There were other witnesses to the events who could and did testify. At the time of trial, [the defendant] was capable of understanding the charges and assist[ing] in the conduct of the trial. We cannot say that in these circumstances an amnesia for the events in question, if it were found that it actually existed, whether caused by drinking on the day in question or at a later date or dates ([the defendant] was out on bail for a period after arrest), or by later trauma, must constitute a defense to criminal prosecution for acts committed in an apparently sober and competent interlude.

*Id.* at 185-86.

We noted in *Stevens*, though, that the Second Circuit left open the possibility that amnesia could act as a bar to prosecution, quoting with approval the following language from *Sullivan*:

> Such a loss of memory *may* call for additional trial safeguards in particular circumstances, as where delay in trial has caused the loss of other evidence, but we are unwilling to hold that it is in all cases an automatic bar to prosecution for a crime amply established by competent evidence on trial.

*Stevens*, 461 F.2d at 320 (quoting *Sullivan*, 406 F.2d at 186) (emphasis added).

Subsequent to our decision in *Stevens*, we have addressed this issue on only one other occasion. In *Leach v. Kolb*, 911 F.2d 1249 (7th Cir. 1990), the defendant argued that, as a result of head trauma, he suffered from amnesia for the period of time during which the alleged crime occurred. *Id.* at 1260. We noted that the defendant did not advance any other theory or evidence other than his alleged amnesia to support his incompetency claim. *Id.* at 1260-61. Accordingly, we concluded that the defendant's amnesia, standing alone, was "not a proper basis for a finding that [he] was incompetent to stand trial." *Id.*

Reading *Leach* in conjunction with *Stevens*, it is clear that amnesia alone does not render a defendant incompetent to stand trial, but that there may additional circumstances under which incompetency could be proven. We have yet to elaborate on the additional circumstances that would support a finding of incompetency for an amnesiac defendant, but several of our sister circuits have considered the issue. In these decisions, the other circuits have first noted that amnesia about the crime does not render a defendant per se incompetent to stand trial. *See, e.g.*, *United States v. Villegas*, 899 F.2d 1324, 1341 (2d Cir. 1990) ("A defendant's amnesia about events surrounding the crime will not automatically render him incompetent to stand trial."); *United States v. Rinchack*, 820 F.2d 1557, 1569 (11th Cir. 1987) (same); *Davis v. Wyrick*, 766 F.2d 1197, 1202 (8th Cir. 1985) (same); *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir. 1978) (same). Rather, an amnesiac defendant, like any other defendant, must show that he is unable "to satisfy the ordinary competency standard: that is, he must be able 'to consult with his lawyer with a reasonable degree of rational understanding and . . . [have] a rational as well as factual understanding of the proceed-

ing against him.'" *Rinchack*, 820 F.2d at 1569 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). Several factors, however, guide a court "[i]n applying this standard to an amnesiac defendant," including:

(1) Whether the defendant has any ability to participate in his defense;

(2) Whether the amnesia is temporary or permanent;

(3) Whether the crime and the defendant's whereabouts at the time of the crime can be reconstructed without the defendant's testimony;

(4) Whether access to government files would aid in preparing the defense;

(5) The strength of the government's case against the defendant.

*See Rinchack*, 820 F.2d at 1569. *See also Villegas*, 899 F.2d at 1341 (listing identical factors); *Swanson*, 572 F.2d at 526 (same); 820 F.2d at 1569 (same); *Davis v. Wyrick*, 766 F.2d at 1202 n.8 (putting particular emphasis on strength of government's case against amnesiac defendant).

We agree that the above factors may assist a district court in applying the competency standard to an amnesiac defendant, but stress that they are not intended to be exhaustive or applied in a rote fashion. The trial judge "is in the best position to make a determination between allowing amnesia to become an unjustified haven for a defendant and, on the other hand, requiring an incompetent person to stand trial." *Swanson*, 572 F.2d at 526. Accordingly, decisions regarding the application of the above factors, and the weight due each factor, is left to the sound discretion of the district court.

Although we expect that it would be an exceptionally rare situation, a defendant's lack of memory could lead a district court to find a defendant incompetent to stand trial. We thus need to consider the procedure the district court must follow when making this competency determination. Andrews agues that this court should adopt the rigid, two-step competency evaluation process set forth by the D.C. Circuit in *Wilson v. United States*, 391 F.2d 460 (D.C. Cir. 1968). In *Wilson*, the D.C. Circuit required the district court to make an initial determination regarding the defendant's competency prior to trial, and then, at the close of trial, make findings of fact that the defendant had demonstrated his competency during the trial. *Id.* at 463-64. No other circuit, however, has adopted this comprehensive approach, and we decline to adopt it. Instead, we will continue to follow our precedent, which offers the district court flexibility in exercising its discretion.

First, a district court should make an initial evaluation regarding whether to order a competency hearing and evaluation pursuant to 18 U.S.C. § 4241. If the amnesiac defendant is found to be competent, the trial should proceed. During the course of trial, the district court should be mindful of the above factors. If at any stage during or after trial, with or without motion by counsel, it becomes apparent that the defendant's amnesia may have rendered him incompetent and jeopardize the fairness of the trial, then the district court again must evaluate the defendant's competency. Other than the suggested factors to be utilized in assessing an amnesiac defendant's competency, this procedural safeguard in no way differs from the long-standing requirement that district courts must, at all times during the trial process, guard against trying an incompe-

tent defendant regardless of when the incompetency materializes or what caused it to occur. *See Stevens*, 461 F.2d at 320; *see also Timberlake*, 409 F.3d at 822. The district court, however, is not required to make a formal finding at the conclusion of trial regarding the amnesiac defendant's competency, as required by the D.C. Circuit in *Wilson*. This approach is in accord with the decisions of our sister circuits.

The question then remains whether Andrews' claimed amnesia rendered him incompetent to stand trial. "When the trial court has held a hearing and made findings about the competency of a defendant, as it did in this instance, 'we will overturn those findings only upon a showing that they are clearly erroneous.'" *United States v. Moore*, 425 F.3d 1061, 1074 (7th Cir. 2005) (quoting *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991)); *see also United States v. Downs*, 123 F.3d 637, 641 (7th Cir. 1997) (stating that a district court's "findings regarding competence are reviewed only for clear error"). Based on the evidence proffered by the government to obtain Andrews' conviction, and considering the above factors, we conclude that the district court did not commit clear error in concluding Andrews was competent to stand trial. Specifically, the stipulated evidence of Andrews' guilt introduced by the government during his bench trial was both overwhelming and scientific in nature. The record indicates that Andrews was capable of understanding the charges against him, discussing the case with his counsel, and evaluating the objective evidence being introduced to prove his guilt. While Andrews' amnesia regarding the five Wisconsin bank robberies appears to be permanent, there is nothing in the record to indicate that Andrews, with the assistance of counsel, could not have reconstructed his whereabouts at the time the bank robberies at

issue were committed. For instance, Andrews could have asked his family members or friends where he had been or with whom during the period in question. No such efforts are noted in the record. Also, nothing in the record indicates that Andrews could not have prepared a defense without access to the government's files, or that the government rejected any such request from Andrews. Finally, and most importantly, the strength of the government's case lay in the clarity of its direct evidence of Andrews' guilt. The two primary sources of evidence against Andrews were his DNA obtained from the scene of the bank robbery and the surveillance video of the interior of the bank taken during the robbery. Nothing in the record indicates that Andrews' claimed amnesia rendered him incapable of challenging the government's DNA collection procedures or identification process, or from offering an alternative explanation regarding why his DNA was found on cigarette butts outside the scene of the bank robbery. Further, Andrews has offered no reason why his claimed amnesia would prevent him from presenting an argument why he is not the man clearly pictured in the bank's surveillance video in the act of robbing the bank. In short, Andrews has failed to offer any suggestion that his claimed amnesia has prevented him from raising any tenable defense to the overwhelming evidence of his guilt. Andrews' alleged amnesia did not impair his ability to defend himself at trial and there was no other evidence of his incompetency. The district court thus did not commit clear error when it found Andrews competent to stand trial.

Andrews also claims that the district court erred in refusing to order a second competency examination or holding a second competency hearing. The decision whether to hold a competency hearing or order a com-

petency examination "is a discretionary decision of the trial court." *Downs*, 123 F.3d at 641. Accordingly, we will review the district court's decision not to order a second competency hearing or examination for abuse of discretion. *United States v. Wilbourn*, 336 F.3d 558, 559 (7th Cir. 2003) ("[The defendant's] sole claim on appeal is that the court erred in denying his request for a second evaluation. We review that decision for abuse of discretion."). Once a defendant has been found competent to stand trial under the *Pate* standard, a district court's decision regarding whether amnesia renders an otherwise competent defendant incompetent to stand trial is not necessarily based on additional medical or psychological testing, but rather on whether "a bona fide doubt [regarding the defendant's competency] subsequently arise[s] during the trial." *Stevens*, 461 F.2d at 321 (citing *Pate*, 383 U.S. at 385); *Wilbourn*, 336 F.3d at 560 (finding "it was not an abuse of discretion for the court to deny [the defendant's] request for a second evaluation when the sole basis for that request was the fact that he continued to demonstrate behavior that the court had already found to be malingering" (citing *United States v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991) (finding that the district court did not abuse its discretion in refusing to order second competency examination where there was "no evidence in [the] record of any irrational behavior by [d]efendant that was not adequately explained in the single competency report"))). That subsequent competency determination, if necessary, is based on an evaluation of the factors set forth above, which bear on the defendant's ability to participate in the trial and defend himself in light of the facts at bar, the evidence presented, and the reasonable defenses available. Here, the district court ordered Andrews to undergo an initial competency evaluation pursuant to 18

U.S.C. § 4241, and Dr. Liberati found Andrews competent to stand trial. The evidence proffered by the government against Andrews was overwhelming, and Andrews failed to identify any reasonable defenses he was precluded from raising due to his claimed amnesia. Magistrate Judge Crocker thus did not abuse his discretion when he denied Andrews' motion for a second competency examination on the ground that nothing legally useful would be obtained by attempting to pinpoint more precisely any organic basis for Andrews' amnesia.

### III.

The district court did not commit clear error when it found Andrews to be competent and allowed him to be tried for allegedly robbing the Anchor Bank in Madison, Wisconsin. The district court also did not abuse its discretion when it declined to order Andrews to undergo a second competency examination. Andrews' conviction, therefore, is AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*