STATE OF CONNECTICUT *v.* MICHAEL J. GILBERT
(11095)

FOTI, LAVERY and LANDAU, Js.

Argued December 14, 1992—decision released February 23, 1993

*Mark Shapera,* special public defender, for the appellant (defendant).

*James Ralls,* assistant state's attorney, with whom, on the brief, were *Mark S. Solak,* state's attorney, and *Mark Stabile,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-56b, misconduct with a motor vehicle in violation of General Statutes § 53a-57, and operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[1] The defendant claims that the trial court improperly (1) denied him a fair trial by refusing to recognize his amnesia as a bar to prosecution, (2) admitted evidence of his blood alcohol level, and (3) denied his request to charge. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 3, 1990, at approximately 8:30 p.m., the defendant, Michael J. Gilbert, left Hank's Restaurant on Route 6 in Brooklyn, Connecticut. He had been

---

[1] The defendant was sentenced on the first count to a term of imprisonment of ten years, with execution of that sentence suspended after five years, followed by five years of probation. On the second count, the defendant was sentenced to a term of five years, to be served concurrently with the sentence imposed on the first count. The court took no action on the third count, and did not impose a sentence, determining that it was a lesser included offense.

there for a few hours and had consumed some alcoholic drinks and pizza. Outside the restaurant, he smelled of alcohol, his speech was slurred and his balance was unsteady. He shuffled when walking and faltered getting into his vehicle, a 1981 Ford Escort. He slumped out of the driver's window and dropped his keys. His eyes were bloodshot and watery. He was upset and planned to drive to another bar located in another town.

Some time before 9 p.m., the defendant, driving in the westbound lane on Route 6 with his headlights off, collided with a vehicle being operated in the eastbound lane. Route 6 is a two lane road, with one lane in each direction; the posted speed limit is forty-five miles per hour. The weather at the time was clear, and the road conditions were dry. The driver of the other vehicle, a 1980 Toyota Corolla, died as a result of injuries she received in the accident. The defendant was found unconscious in the driver's seat of his car. He smelled of alcohol, and there were several open and empty beer cans in the vehicle, as well as a number of unopened cans of beer. The point of impact appeared to be in the the eastbound lane, in which the victim was driving.

The defendant was taken to Day Kimball Hospital in Putnam, where, as part of the hospital's regular course of diagnosis and treatment of trauma patients, a blood sample was taken. The test revealed that the defendant's blood alcohol level per deciliter was 0.226, which translates to a 0.194 percent alcohol ratio. As a result of the accident, the defendant suffered a traumatic brain injury which resulted in temporary paralysis and coma. In addition, the defendant suffered some loss of memory.

I

The defendant contends that he suffers from amnesia[2] as a result of the accident and cannot recall

---

[2] The trial court, in denying the defendant's motion to dismiss the charges against him, specifically found that "the defendant cannot recall the events

the events in his life from two weeks before the accident until five weeks afterward. This condition, he claims, prevented him from exercising his constitutional right to due process of law as provided by the fourteenth amendment to the United States constitution and article first, §§ 8 and 20, of the Connecticut constitution. Specifically, the defendant claims that he did not receive a fair trial because he could not testify on his own behalf, confront witnesses, call witnesses, establish a defense, and have effective assistance of counsel. Since his amnesia is permanent, the defendant claims that he can never be tried because he can never obtain a fair trial.

We note initially that the defendant does not claim on appeal that he was incompetent to stand trial, as defined under General Statutes § 54-56d.[3] While he acknowledges that he understands the nature of the proceedings, he claims that, as a matter of law, his amnesia precludes him from ever receiving a fair trial.[4] As part of this claim, he contends that the trial court improperly denied his motion in limine, in which he sought to prevent two witnesses from testifying about conversations they had with him outside Hank's Res-

of his life from two weeks before the accident until five weeks afterward. It is very unlikely that his amnesia relative to this period will ever abate."

[3] General Statutes § 54-56d provides in pertinent part that a "defendant shall not be tried, convicted or sentenced while he is not competent. . . . [A] defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense." See *State* v. *DeAngelis,* 200 Conn. 224, 229, 511 A.2d 310 (1986).

[4] On May 1, 1991, the trial court held a competency hearing pursuant to General Statutes § 54-56d, and found the defendant competent to stand trial. The defendant did not claim incompetency under § 54-56d at the time of trial in November, 1991, and is precluded from raising this issue on appeal. *State* v. *Chapman,* 28 Conn. App. 360, 368–69, 610 A.2d 1328, cert. granted, 223 Conn. 923, 614 A.2d 827 (1992). The defendant did raise, by motion to dismiss, his present due process claim that he cannot receive a fair trial because he suffers from the mental defect of amnesia. The motion was denied on May 31, 1991, and presented again at the time of trial.

taurant before the accident because he could not "confront" them, having no memory of the encounters.[5]

We do not agree that amnesia was a bar to trial of the defendant under the facts of this case. The defendant concedes, and we agree, that amnesia is not a per se bar to criminal prosecution. *United States* v. *Sullivan,* 406 F.2d 180, 186 (2d Cir. 1969); *Wilson* v. *United States,* 391 F.2d 460, 462–63 (D.C. Cir. 1968). The defendant urges us to adopt, as did the *Wilson* court, a multifactor approach to the question of whether a defendant's loss of memory precludes his prosecution. Under the *Wilson* approach, he claims, he should never be prosecuted.

In *Wilson,* the court framed the due process inquiry as whether a defendant could, in light of his amnesia, " 'perform the functions essential to the fairness and accuracy of the particular proceedings in which he is personally involved.' " *Wilson* v. *United States,* supra, 463. The *Wilson* court chose to resolve this question by requiring the trial court to conduct both a pretrial competency hearing and a posttrial determination that the defendant had been able to perform these essential functions. The court listed six factors for the trial court to consider in determining the effect of the amnesia on the trial's fairness: (1) the extent to which the amnesia affected the defendant's ability to consult with or assist his attorney; (2) the extent to which the amnesia affected his ability to testify in his own behalf; (3) the extent to which the evidence could be extrinsically reconstructed in view of the defendant's amnesia, including evidence relating to the crime itself and

---

[5] After the trial court denied the defendant's motion in limine, both witnesses testified. The defendant did not cross-examine Delana O'Neill. He briefly cross-examined Henry Hewig about the direction in which the defendant was walking when Hewig saw him outside the restaurant, the appearance of the defendant's eyes, and the statement Hewig voluntarily gave to state police two days after the accident.

any reasonably possible alibi defense; (4) the extent to which the government assisted the defendant and his counsel in that reconstruction; (5) the strength of the government's case; and (6) any other relevant factors regarding a fair trial. Id., 463–64. "After finding all the facts relevant to the fairness of the trial, considering the amnesia, the [trial] court will then make a judgment whether, under applicable principles of due process, the conviction should stand." Id., 464.

In rendering its decision on the defendant's motion to dismiss, the trial court, *Sferrazza, J.,* carefully considered the arguments of counsel regarding *Wilson* and, recognizing that there are no Connecticut cases addressing this issue, stated: "While the court finds that the case by case approach of *Wilson* is applicable the court feels [that] the specific findings required by that case are impractical and unnecessary to a determination of whether a defendant would be denied due process of law if forced to stand trial." The court stated that it favored the approach employed by the Second Circuit Court of Appeals in *United States* v. *Sullivan,* supra.

In *Sullivan,* the defendant also claimed amnesia regarding the events surrounding the charges. At the time of trial, however, he was able to understand the charges and assist in the conduct of the trial. The court concluded that the defendant's lack of memory would not be "a bar to his conviction if he was at the time of the offense capable of forming the requisite criminal intent, and at the time of trial competent to understand the nature of the proceedings against him and consult rationally with counsel." Id., 186. The *Sullivan* court focused heavily on whether the defendant's amnesia prevented him from forming the requisite intent for the offenses charged. The *Sullivan* majority concluded that, despite his amnesia, the defendant was not without general criminal intent because he did not "[lack]

substantial capacity to appreciate the wrongfulness of his conduct or conform it to the requirements of law at the time of such conduct." Id.

The trial court in this case agreed with *Sullivan* that the starting point of its analysis must be "whether [a defendant] has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . ." (Internal quotation marks omitted.) Id., 185. The trial court then meticulously placed on the record facts to support its conclusion that "based on the present ability of the defendant to consult rationally with his attorney and the ample opportunity for the defense to reconstruct the events of August 3, 1990, independent of the defendant's recollections, a fair trial can be had in this case . . . ."[6]

The defendant contends that *Sullivan* is not applicable here because it was not decided on due process grounds. While *Sullivan* did not involve a constitutional claim, we do not view this as a reason for rejecting its analytical insights. Moreover, while the trial court found it unnecessary to employ the more rigid, six-factor approach espoused in *Wilson,* the trial court did perform a case by case analysis, examining all of the facts and circumstances and properly addressing the basic due process inquiry posed in *Wilson*: Whether a defendant suffering from amnesia could perform the functions essential to the fairness and accuracy of the proceedings.

First, the trial court found that the defendant could "communicate and consult rationally with his attorney. He has the ability to provide his counsel with the infor-

---

[6] The court stated: "Both the Norwich Court Clinic report and the Fairlawn Rehabilitation Hospital report conclude that this defendant can communicate and consult rationally with his attorney. He has the ability to provide his counsel with the information concerning the charges that he does recall. For instance, the defendant is able to recall that the insurance on his vehicle had lapsed and was not renewed."

mation concerning the charges that he does recall."
Second, the court found that because the offenses did
not require a specific intent or knowledge, they were
"particularly amenable to reconstruction, despite the
defendant's memory loss, because the defendant's con-
temporaneous mental state is immaterial." Third, the
trial court noted that the state had provided the defense
with open discovery to assist the defendant and his
counsel in reconstructing events.[7] Finally, the trial
court noted that the defendant's mental impairment
did "not place him in any worse position than any one
of the myriad defendants involved in accidents who
have no memory of the event because of inebriation."[8]
In so stating, the trial court implicitly recognized that
it is "the probability of prejudice, not lack of memory

[7] The trial court found that: "The state has provided the defense with
open discovery including a copy of a twenty-two page accident investiga-
tion report. This report provides specific information, including the names
and addresses of witnesses, detailing the activities of the defendant and
the victim in the days and hours preceding the collision. It discloses the
names and statements of the employees of the restaurant who observed
the defendant and served liquor to the defendant shortly before the inci-
dent. It provides the names and statements of the defendant's friends who
talked with him and observed his physical condition as he exited the res-
taurant, entered his vehicle, and drove off onto Route 6. It provides the
names and statements of witnesses who came upon the accident scene
shortly after impact. It discloses a wealth of physical evidence obtained
at the scene and thereafter, including debris dispersal analysis, diagrams,
measurements, an inventory of the contents of the vehicles, and other mate-
rial pertinent to accident reconstruction. It comprises medical information
regarding the cause of death of the victim and the medical condition of the
defendant, including the blood-alcohol ratio for both parties. It reveals that
photographs of the accident scene and the vehicles on the date of the acci-
dent and at later times were taken."

[8] The trial court noted: "This is not a case where the defenses of alibi
or mistaken identification apply. Even the question of operation appears
uncontrovertible given the evidence that the defendant was found alone
in his own vehicle after the crash and witnesses observed him driving onto
Route 6 just before the crash. The significant remaining issues appear to
be inebriation and causation. Proof of these matters frequently relies on
physical evidence and independent witnesses rather than the recollection
of the drivers involved."

per se, [that is] controlling." *Wilson* v. *United States,* supra, 464 n.4. We conclude that on the basis of this analysis, the trial court properly found that the defendant's prosecution, despite his amnesia, did not violate due process.

Our underlying task in reviewing the trial court's findings is first to review the evidence presented, construing it in the light most favorable to sustaining the facts expressly found by the trial court, and then to decide whether, on the basis of the facts thus established and the inferences reasonably drawn therefrom, the trial court could have concluded as it did. *State* v. *Rivera,* 223 Conn. 41, 49, 612 A.2d 749 (1992); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991).

Our review of the record in this case discloses that the trial court reasonably could have concluded that the defendant possessed a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him"; (internal quotation marks omitted); *Dusky* v. *United States,* 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960); and that the defense had an ample opportunity to reconstruct the events of the evening in question and to cross-examine witnesses, even without the defendant's specific recollection of events. There was no probability of prejudice. Viewing the trial record in its entirety, we disagree with the defendant's contention that as a result of his amnesia he could not and did not receive a fair trial. We, therefore, conclude that the trial court properly denied the defendant's motion to dismiss and his motion in limine.

## II

The defendant next claims that the trial court improperly admitted evidence of his blood alcohol level at the

time of the accident. The defendant asserts that the evidence should have been excluded because the blood alcohol analysis was admitted in violation of General Statutes § 14-227a (d) and General Statutes (Rev. to 1985) § 14-227a (c), as amended by No. 86-345 of the 1986 Public Acts. We disagree.

The facts relevant to this claim are as follows. On the night of the accident, the defendant was transported by ambulance to Day Kimball Hospital. As part of the hospital's regular course of diagnosis and treatment of trauma victims, a certified medical technologist took a blood sample from the defendant. A number of tests were performed on the sample, including a test of the defendant's blood alcohol content. State police officers later obtained the results of this blood test by means of a search and seizure warrant.

The defendant claims that the blood test results should not have been admitted into evidence because he was charged with a violation of subsection (a) (1), the "behavioral" subsection, of General Statutes § 14-227a,[9] rather than a violation of subsection (a) (2), the "per se" subsection, and because subsection (d)[10] of § 14-227a specifies that blood test results, even those

---

[9] General Statutes § 14-227a (a) provides: "OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[10] General Statutes § 14-227a (d) provides: "EVIDENCE OF BLOOD ALCO-HOL CONTENT. In any prosecution for a violation of subdivision (1) of subsection (a) of this section, reliable evidence respecting the amount of alcohol

taken at a hospital for diagnosis and treatment, are admissible only at the defendant's request. It is undisputed that the defendant made no such request.

We disagree with the defendant's reading of General Statutes § 14-227a. We conclude that even when a defendant is charged under § 14-227a (a) (1), the "behavioral" subsection, blood test results may be admitted, without his request, when the blood has been drawn in the regular course of hospital business for the diagnosis and treatment of the defendant's physical injury.

The admissibility of chemical analyses is controlled by General Statutes § 14-227a (c),[11] which lists six fac-

or drugs in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's blood, breath or urine, otherwise admissible under subsection (c) of this section, shall be admissible only at the request of the defendant."

[11] General Statutes § 14-227a (c) provides: "ADMISSIBILITY OF CHEMICAL ANALYSIS. Except as provided in subsection (d) of this section, in any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the department of health services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the commissioner of health services. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (4) the device used for such test was checked for accuracy immediately before and after such test was performed by a person certified by the department of health services; (5) an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed, provided however the results of the initial test shall

tors that must be met before such evidence is deemed admissible and competent. One of those factors is the requirement that "the test was performed by or at the direction of a police officer . . . ." General Statutes § 14-227a (c) (3). Section 14-227a (d) very clearly states that a chemical analysis that is *"otherwise admissible under subsection (c) of this section,* shall be admissible only at the request of the defendant." (Emphasis added.) Subsection (d) does not refer to subsection (*l*) of § 14-227a.[12] The latter makes admissible as evidence, for the prosecution of a violation

not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection; and (6) evidence is presented which demonstrates that the test results and the analysis thereof accurately reflect the blood alcohol content at the time of the alleged offense."

[12] General Statutes § 14-227a (*l*) provides: "SEIZURE AND ADMISSIBILITY OF CHEMICAL ANALYSIS OF HOSPITAL BLOOD SAMPLE OF INJURED OPERATOR. Notwithstanding the provisions of subsection (c) of this section, evidence respecting the amount of alcohol or drug in the blood of an operator of a motor vehicle involved in an accident who has suffered or allegedly suffered physical injury in such accident, which evidence is derived from a chemical analysis of a blood sample taken from such person at a hospital after such accident, shall be competent evidence to establish probable cause for the arrest by warrant of such person for a violation of subsection (a) of this section and shall be admissible and competent in any subsequent prosecution thereof if: (1) The blood sample was taken in the regular course of business of the hospital for the diagnosis and treatment of such injury; (2) the blood sample was taken by a person licensed to practice medicine in this state, a resident physician or intern in any hospital in this state, a qualified laboratory technician, an emergency technical II or a registered nurse; (3) a police officer has demonstrated to the satisfaction of a judge of the superior court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor or drug or both and that the chemical analysis of such blood sample constitutes evidence of the commission of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drug or both in violation of subsection (a) of section 14-227a; and (4) such judge has issued a search warrant in accordance with section 54-33a authorizing the seizure of the chemical analysis of such blood sample."

under § 14-227a (a), any chemical analysis of the defendant's blood that is taken at a hospital. Such chemical analyses are therefore admissible under § 14-227a (*l*) "[n]otwithstanding the provisions of subsection (c)" for both behavioral and per se violations under § 14-227a (a).

The blood test results in question were obtained from a test performed as part of the defendant's diagnosis and treatment at Day Kimball Hospital, not from a test performed by or at the direction of a police officer. Section 14-227a (c) is therefore inapplicable. Because this evidence was not "otherwise admissible under [§ 14-227a (c)]," the defendant's request pursuant to § 14-227a (d) was not a necessary predicate to its admissibility.

The defendant contends that our analysis here requires a review of the legislative history of Public Acts 1986, No. 86-345, codified as General Statutes § 14-227a (*l*) and passed as an amendment to General Statutes (Rev. to 1985) § 14-227a (c), to determine the legislative intent regarding admissibility of hospital performed blood tests. We decline to do so, however, as the statute is clear and unambiguous. *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 336, 593 A.2d 478 (1991). Where the words of a statute are clear, our duty is to apply the legislature's directive. "[W]here the wording [of a statute] is plain, courts will not speculate as to any supposed intention because the question . . . is not what the legislature actually intended, but what intention it expressed by the words that it used." (Internal quotation marks omitted.) Id.

Alternatively, the defendant contends that the blood alcohol test should not have been admitted because the witness and taker of the sample was not a "person licensed to practice medicine in this state, a resident physician or intern in any hospital in this state, a quali-

fied laboratory technician, an emergency technician II or a registered nurse" as required by General Statutes § 14-227a (*l*) (2). We disagree. The trial court found that a certified medical technologist is at least a qualified laboratory technician, in that the medical technologist's training encompasses and exceeds that of a laboratory technician. Our review of the record reveals that the trial court's factual findings are supported by substantial evidence. See *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).[13]

## III

Finally, the defendant claims that the court improperly refused to instruct the jury using the exact language he requested.[14] The defendant concedes that the separate charges given on both manslaughter in the second degree with a motor vehicle and misconduct with a motor vehicle "were correct statements of the law." He does not claim that the instructions as given

[13] In his reply brief, the defendant renews his equal protection argument, made before the trial court, that the admissibility of hospital performed blood tests without a defendant's request impermissibly distinguished between defendants charged under General Statutes § 14-227a (a) (1) who are injured and receive treatment at a hospital and those who are not injured and treated. We do not agree that such a distinction is irrational. The legislature could rationally have determined that the more complex procedural safeguards are necessary when such tests are performed as part of a police investigation. These additional protections against government intrusion are not warranted when such tests are performed by a hospital, which requires a blood analysis not as a means of obtaining evidence for the purpose of criminal prosecution, but as part of its routine course of treating and diagnosing accident victims.

[14] The defendant submitted the following request to charge: "It is possible to operate a motor vehicle while intoxicated, resulting in the death of another, without failing to perceive the risk involved in driving in that condition. For example, one can be intoxicated, and also perceive the risks involved in driving in that condition, and yet ignore those risks, and then, because of the intoxication, be unable to maintain sufficient control of the motor vehicle to avoid a collision. *State* v. *Kristy* [11 Conn. App. 473, 528 A.2d 390, cert. denied, 206 Conn. 801, 535 A.2d 1315 (1987)]."

were incorrect, incomplete, inconsistent or confusing. Rather, he claims that his request would have been "especially important regarding the mental element [of criminal negligence] which must be proven" on the misconduct with a motor vehicle count. We do not agree.

The purpose of a jury instruction is to give jurors a clear understanding of the elements of the crimes charged and to afford them proper guidance for their determination of whether those elements were present. *State* v. *Usry*, 205 Conn. 298, 316, 533 A.2d 212 (1987). In determining whether the trial court's instructions were adequate, we view the charge "as a whole to determine whether it is reasonably possible that the instruction misled the jury." *State* v. *Ortiz*, 217 Conn. 648, 667, 588 A.2d 127 (1991).

The trial court in a criminal proceeding is under no duty to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the requested charge. *State* v. *Pinnock*, 220 Conn. 765, 789, 601 A.2d 521 (1992). The court's responsibility is performed when it instructs the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration under the crimes charged and on the evidence, and when those instructions are suited to guide them in their determination of those issues. *State* v. *Watlington*, 216 Conn. 188, 199, 579 A.2d 490 (1990).

Our review of the charge as a whole leads inescapably to the conclusion that there is no reasonable possibility that the jury was misled. It is clear after reading the charge that the jury was adequately informed of all the applicable law. The defendant's request to charge was unnecessary, given the court's thorough and clear instruction.

The judgment is affirmed.

In this opinion the other judges concurred.