[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition requesting habeas corpus relief from incarceration resulting from an allegedly unlawful conviction for sexual assault first degree, kidnapping first degree, and robbery first degree for which the petitioner received a total, effective prison sentence of forty years to serve. CT Page 9457
The second and third counts of the petitioner's second, amended petition were disposed of previously. The first and remaining count asserts that the petitioner's conviction was invalidedly obtained because his trial counsel, Attorney Fred Sette, rendered ineffective assistance by refusing to allow the petitioner to testify at his criminal trial; by failing to file requests to charge the jury in a timely fashion; by inadequately investigating the defense of alibi; by inadequately cross-examining witnesses; by failing to file a motion in limine regarding the petitioner's pre-trial detention; by failing to object to and request a curative instruction regarding a reference to the petitioner's mug shots during trial; and by failing to" move to disqualify a juror after evidence, arguments, and jury instructions were completed.
Shortly after his arrest for the above-mentioned offenses, the petitioner retained Attorney Sette to represent him. Attorney Sette and a former associate Attorney Steven Walsh, worked together on the petitioner's defense, putting in over fifteen hundred hours of work in this effort.
The allegations against the petitioner were that he lay in wait behind a storage trailer to the rear of a convenience store. When the victim emerged from the store after making a purchase therein, the petitioner exited from his hiding place, struck the victim, choked her, put a screwdriver to her neck, forced her to move to a secluded area where he partially disrobed her, and raped her. He was also alleged to have stolen property and money from her before he left the area.
An acquaintance of the victim had gone to the same store earlier that day and had seen the person who was believed to be the assailant. A few weeks later, this acquaintance recognized this person at the same location. The friend contacted the victim's sister and father, informed them of her suspicions, and the victim's sister and father went to the store. All three of them trailed the suspect, who turned out to be the petitioner, as he began to drive away. He was followed to a grocery store in another town. The victim was contacted and also joined the group watching the petitioner at the grocery store. The victim recognized the petitioner as the rapist, and the group continued to follow him to a post office in New Haven. The New Haven police were alerted, responded, and interviewed a member of the group. The police followed the petitioner as he now drove away from the post office. After a short distance the police pulled the petitioner over, and CT Page 9458 the petitioner stopped his vehicle and fled on foot. He was apprehended after a short time.
At trial the theory of the defense was one of alibi. At the time of the incident, the petitioner worked for a temporary worker service business and was hired out as a security guard. The petitioner had not worked on March 11, 1988, a Friday, which was the evening of the attack. The petitioner informed his trial counsel of the names of persons who were with him at the time of the assault. Some of these witnesses claimed that they especially recollected being with the petitioner that evening because it was unusual for the petitioner to have a Friday night off from work. The petitioner also related to his attorney that he had not fled from the parties or the police on the day of his arrest.
Trial counsel also became aware that the petitioner had a 1973 murder conviction stemming from a grisly homicide in Mississippi for which the petitioner was on parole at the time of the rape. Before trial, the petitioner's counsel filed a motion in limine to preclude use of the murder conviction for impeachment should the petitioner testify (Petitioner's Exhibit A, p. 72). In response, the prosecutor agreed that, should the petitioner testify, the only information to be revealed to the jury would be that the petitioner had an unspecified felony conviction. However, the prosecutor warned that, if the petitioner put his character in issue, the state intended to present the details of the conviction before the jury. (Petitioner's Exhibit A, pp. 74 and 75). The trial court reiterated this caveat in its ruling accepting the arrangement (Petitioner's Exhibit A, p. 75).
The petitioner's denial of flight was contradicted by the prosecution witnesses and by a tape recording of the 911 call by the victim's friend to the police station and the subsequent dispatches, which recordings chronicled the police pursuit of the petitioner. Because of this contradiction, the petitioner's trial counsel had the recordings expertly analyzed by a sound engineer in order to discover possible tampering. This analysis disclosed no such adulteration.
Trial counsel also interviewed all the alibi witnesses whose names were provided by the petitioner. Trial counsel did not interview the petitioner's employers nor examine their employment records before trial.
During trial the petitioner asked his attorney if he would be CT Page 9459 testifying on his own behalf. The petitioner claims he begged his attorney to permit him to testify, but his counsel insisted that he would not allow the petitioner to take the stand. The petitioner also claims that he voiced his desire to testify on the record after the prosecution rested its case. The petitioner concedes that the transcript of his trial contains no such request (Petitioner's Exhibit A, p. 626 et seq.).
Attorney Sette testified at the habeas hearing that he never prevented the petitioner from testifying. He indicated that he discussed the possibility of testifying with the petitioner and recommended to him that he decline to testify. He made this recommendation because the petitioner's testimony would be cumulative of other alibi testimony, and he feared that what little benefit might be gained was outweighed by the risk that the petitioner's character might be unintentionally put in issue and that the sordid details of the Mississippi murder might become admissible. He stated that he explained his recommendation to his client and that the petitioner decided to take his advice.
After the conclusion of evidence, the trial judge conducted a charging conference with counsel in chambers (Petitioner's Exhibit A, p. 759). At this conference, Attorney Sette indicated that he would be submitting a request to charge and, in particular, a request to charge regarding identification (Petitioner's Exhibit C-1). The trial judge responded that he would consider such a request but that he had a charge concerning the same topic with which he was satisfied. Attorney Sette received the impression from the trial judge that the judge's version would prevail.
The next morning he had to embark for court without his request to charge because of a typographical error that needed last-minute correction. A paralegal from his office was to transport the amended request to charge to court upon completion. Unfortunately, the request to charge arrived later than expected, and the trial judge refused to consider it.
At trial a number of the petitioner's alibi witnesses testified that the petitioner usually worked as a security guard on Friday evenings but was off on the Friday of the assault. They further testified that they spent that evening with the petitioner (Petitioner's Exhibit A, pp. 631, 698, and 732). In rebuttal, the prosecution presented Claudia Kiely, the petitioner's supervisor (Petitioner's Exhibit A, pp. 764 to 766). She testified that, according to the time cards, the petitioner, during his employment CT Page 9460 with her firm, never worked on a Friday evening as a security guard.
As the trial judge was releasing the jurors to commence deliberations, one juror alerted the court that he might be disqualified from further participation in the trial. He disclosed that he might have worked with Kiely sometime during the past year. The juror was unfamiliar with the rebuttal witness's last name and only recognized her when she testified. He further indicated that his contact with her was limited to a phone conversation (Petitioner's Exhibit A, p. 819). He repeatedly stated that his consideration of the petitioner's case would remain unaffected by this limited contact. Neither prosecution nor defense objected to the continued service by this juror, and the trial court saw no need to disqualify him (petitioner's Exhibit A, p. 820).
On October 21, 1988, the jury returned a guilty verdict on all counts, and, on December 2, 1988, the petitioner received a total, effective sentence of forty years incarceration. Between verdict and sentencing, Attorney Sette examined the work records pertinent to the petitioner. The records of the petitioner's employer, indeed, disclosed no Friday employment. However, an examination of the employer's client's records showed that the petitioner had worked on three Fridays from December 25, 1987, to March 11, 1988. Claudia Kiely gave a post-verdict affidavit to this effect on December 1, 1988. Based in part on this newly acquired information, Attorney Sette moved for a judgment of acquittal or a new trial (petitioner's Exhibit B). These motions were denied.
The petitioner appealed his convictions, and the judgment was affirmed, State v. Holliman, 214 Conn. 38 (1990).
On April 10, 1990, the petitioner filed this habeas corpus action, and on December 20, 1993, the court held the hearing on the matter. The parties have filed post-trial briefs setting forth their respective arguments. In the petitioner's post-trial brief, the petitioner omits any discussion or argument regarding his claims that his trial counsel rendered ineffective assistance by failing to file a motion in limine regarding the petitioner's pretrial detention status and by failing to object to or to request curative instruction concerning reference to the petitioner's mug shots at trial. The court regards these claims as having been abandoned.
I CT Page 9461
Our Supreme Court has adopted the two-pronged Strickland test for claims of ineffective assistance, Ostolaza v. Warden, 26 Conn. App. 758
(1992), p. 761. That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceeding would have been different, Ibid.
With respect to the petitioner's claim that his trial counsel deprived the petitioner of his opportunity to testify in his own behalf at his criminal trial, the court observes that the evidence adduced at the habeas hearing on this issue was conflicting. Credibility is for the trier-of-fact to determine. Attorney Sette testified that he explained the ramifications and dangers attendant to the petitioner taking the stand and advised the petitioner to exercise his right not to testify. He also testified that the ultimate decision to avoid testifying was made by the petitioner. The court finds Attorney Sette's testimony, in this regard, to be credible. The court finds the petitioner's version, in which he claims to have pleaded with his attorney to allow him to testify to be unworthy of belief and contrary to the transcript of the proceeding. The petitioner has failed to meet his burden of proving that Attorney Sette barred him from testifying.
 II
The petitioner's next claim is that his trial counsel rendered ineffective assistance by failing to file requests to charge the jury in a timely manner. A court deciding on effective assistance claim need not address the question of counsel's performance if it is easier to dispose of the claim on the ground of insufficient prejudice, Pelletier v. Warden, 32 Conn. App. 38 (1993), p. 46. Attorney Sette testified at the habeas hearing that, although he would have preferred that the trial judge charge the jury in the language of his requests to charge, he felt that the trial judge's instructions covered much of the same ground. He also testified that the trial judge, in a charging conference, strongly intimated that he was inclined to give his own version of instructions in these areas rather than adopt the petitioner's counsel's version.
A trial court in a criminal case is under no duty to charge in the identical language requested as long as its charge is accurate, adequate, and includes the material portion requested, State v. Gilbert, 30 Conn. App. 428 (1993), p. 442. This court has reviewed CT Page 9462 and compared the charge as requested by Attorney Sette with the charge as given by the trial court and finds that the petitioner has failed to meet his burden of proving that there exists a reasonable likelihood that the requested charge would have been given if timely filed and that the outcome of the petitioner's trial would have been different if the rejected charge had been given. The charge to the jury given by the trial court encompassed all the material issues addressed in the belated request to charge.
 III
The petitioner's next claim is that his trial counsel rendered ineffective assistance by inadequately investigating his alibi defense, which failure resulted in inept cross-examination of a rebuttal witness. As noted above, the petitioner's trial attorney had, before trial, interviewed every potential alibi witness whose identity was provided by the petitioner.
It must be emphasized that neither the prosecution nor the defense was claiming that the petitioner was working at the time of the rape and robbery. The evidentiary significance of the petitioner's work schedule was to explain why some of the alibi witnesses specifically recalled the evening in question. They testified at trial that the petitioner usually worked on Friday evenings but had not done so on the evening of the incident. The petitioner's work schedule was not an issue until the prosecution called the petitioner's supervisor as a rebuttal witness, after the defense rested, to refute the petitioner's alibi witnesses' claims to special reason to remember where the petitioner was on the evening in question.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness, Johnson v. Commissioner, 218 Conn. 403 (1991), p. 425. This standard of reasonableness is measured by prevailing, professional norms, Ibid. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation, Ibid.
In the instant case, the defense made no claim that the petitioner was engaged at work during the time of the assault. Attorney Sette had no reason to examine the petitioner's work records because the defense had no such claim. The corroborating CT Page 9463 circumstances of the petitioner's work history became pertinent only after the prosecution's rebuttal during the trial. To have anticipated that a dispute regarding the petitioner's work history would arise during trial would have been an act of clairvoyance.
While it is incumbent on a trial lawyer to conduct a prompt and through investigation, counsel need not investigate every evidentiary possibility, Ostolaza v. Warden, supra, p. 765. The court finds that the petitioner has failed to meet his burden of proving that his trial attorney's conduct fell below prevailing, professional norms in this regard.
 IV
The petitioner's final contention is that Attorney Sette ought to have moved to disqualify one of the seated jurors upon the disclosure by that juror that he might have been acquainted with a prosecution's rebuttal witness and that failure to do so constituted ineffective assistance. The juror in question alerted the trial court that he might "possibly" have had contact with the witness to the extent of a phone conversation regarding the temporary service sometime in the previous year (Petitioner's Exhibit A, pp. 818 and 819).
On three occasions this juror indicated to the trial court that this minimal contact would not affect his decision in the petitioner's case (Petitioner's Exhibit A, pp. 818 and 819). The trial judge specifically noted that he found no basis to disqualify the juror existed. This court finds that trial counsel's decision to refrain from requesting disqualification of the juror was a tactical one. There was no evidence that the juror was biased toward the rebuttal witness. Trial counsel's decision may have engendered in the juror a feeling of trust by the defense in the juror's ability to decide the matter impartially. In any event, it is apparent from the record that the trial judge would have denied any request to disqualify the juror. The petitioner has failed to prove either prong of the Strickland standard with respect to this issue.
For the above reasons, the petition is dismissed.
Sferrazza, J. CT Page 9464