[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO VACATE JUDGMENT AND WITHDRAW GUILTY PLEA
On November 18, 1988, Donovan Gordon was arrested after the police, while on a routine patrol, approached the defendant and observed him discarding a package containing thirty-four vials of crack cocaine, constituting a total of 3.27 grams. On March 10, 1989, he pled guilty under the Alford doctrine to one count of possession of a narcotic substance with the intent to sell in violation of General Statutes § 21a-277(a). North Carolina v.Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The guilty plea was accepted by Judge Lavery, after he canvassedinter alia the defendant as follows:
THE COURT: You're not a citizen of the United States?
THE DEFENDANT: No.
THE COURT: All Right. Do you understand that if I CT Page 3322 accept your plea of guilty, you're subject to deportation, refusal of readmission to the United States. You understand all that?
THE DEFENDANT: Yes, your Honor.
 THE COURT: And that any type of citizenship that you wish to get in the United States is in jeopardy. Do you understand that?
THE DEFENDANT: Yes, your Honor.
(Transcript, March 10, 1989.)
On March 17, 1988 the court committed Gordon to the custody of the Commissioner of Correction.
On April 28, 1994, the Immigration and Naturalization Service initiated an exclusion proceeding against Gordon, by issuing its Form I-122. The Form I-122 served on the defendant states that
 [y]ou do not appear . . . to be clearly and beyond a doubt entitled to enter the United States as you may come within the exclusion provisions of Section 212(a)(2)(A)(i)(II), 212(a)(2)(C) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, as amended, in that you were convicted on March 17, 1989 at Superior Court, Waterbury, CT., for Possession of Narcotics with the intent to sell, and it appears you are a trafficker in narcotics. Also, you are an immigrant not in possession of a valid immigrant visa, reentry permit, border crossing card or other valid entry document.
(Defendant's Exhibit 1.)
Donovan Gordon has now moved to vacate the judgment and withdraw the plea of guilty on the ground that the court failed to advise the defendant concerning the effect of his guilty plea on his immigration and naturalization status, as required by General Statutes § 54-1j.
General Statutes § 54-1j provides: CT Page 3323
 (a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: "If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."
 (b) The defendant shall not be required at the time of the plea to disclose his legal status in the United States to the court.
 (c) If the court fails to advise a defendant as required in subsection (a) of this section and the defendant later at any time shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. In the absence of a record that the court provided the advice required by this section, the defendant shall be presumed not to have received the required advice.
It is undisputed that the court, while performing the canvass, did not recite the phrase "`exclusion from admission of the United States'" from the quoted language of subsection (a). The issues presented by this motion are, therefore, (1) whether this court must vacate the judgment under subsection (c), because of the court's failure to use the precise statutory warning, and (2) if the precise warning is not required, did the court's warning satisfy the requirements of the statute. — We will assume for the purposes of this decision that Gordon is facing exclusion proceedings.
Verbatim Compliance
 The acceptance of a plea of nolo contendere [or guilt] is governed by federal constitutional standards as well as state rules of practice. "`Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against CT Page 3324 compulsory self-incrimination . . . [s]econd, is the right to trial by jury . . . [t]hird, is the right to confront one's accusers.' Boykin v. Alabama, [395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)]. Further, under the Connecticut rules of practice, a trial judge must not accept a plea of nolo contendere [or guilt] without first addressing the defendant personally and determining that the plea is voluntarily made under Practice Book § 712 and that the defendant fully understands the items enumerated in Practice Book 711. State v. Godek, 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); State v. Battle, 170 Conn. 469, 473, 365 A.2d 1100 (1976); State v. Bugbee, 161 Conn. 531, 533, 290 A.2d 332
(1971)." State v. Martin, supra, 22-23.
* * *
 . . . While the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional rights delineated in Boykin, it does not require that the trial court go beyond these "constitutional minima." United States v. Dayton, 604 F.2d 931, 935 n. 2 (5th Cir. 1979) (en banc). A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book §§ 711 and 712. Therefore, although the Practice Book provisions were designed to reflect the principles embodied in Boykin; State v. Godek, 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226
(1981); Blue v. Robinson, 173 Conn. 360, 373, 377 A.2d 1108 (1977); precise compliance with the provisions is not constitutionally required. Thus, our analysis will focus on whether the federal constitutional principles of Boykin were satisfied rather than on meticulous compliance with the provisions of the Practice Book.
State v. Badgett, 200 Conn. 412, 417, 512 A.2d 160 (1986).
The warning regarding the effect of a guilty plea on a defendant's immigration status is not required by any federal CT Page 3325 constitutional mandate. See Commonwealth v. Hanson,27 Mass. App. 840, 545 N.E.2d 52, 54 (Mass.App. 1989); Lyons v.Pearce, 298 Or. 554, 694 P.2d 969 (1985); United States v.Santelices, 476 F.2d 787, 789 (2d Cir. 1973); see also State v.Badgett, supra, 200 Conn. 417 (federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers). — The warning at issue here is purely a statutory creature. See Commonwealth v. Hanson, supra, 545 N.E.2d 54; Lyons v. Pearce, supra, 694 P.2d 969.
In Connecticut, the General Assembly has provided that a defendant may move the court to vacate a judgment based on a guilty plea "if the court fails to advise the defendant as required in subsection (a)" of General Statutes § 54-1j. — The question whether subsection (a) requires the recitation verbatim of the statutory warning has not, as far as our research reveals, been previously decided by this bench.
Donovan Gordon argues that the legislature's use of quotation marks surrounding the text of the warning in the statute mandates that the court read the quoted language to any defendant upon accepting the guilty plea. "It is true that punctuation is a recognized aid to statutory construction, but it is not conclusive." State v. Dennis, 150 Conn. 245, 248,188 A.2d 65 (1963), citing Connecticut Chiropody Society, Inc. v.Murray, 146 Conn. 613, 617, 153 A.2d 412; 2 Sutherland, Statutory Construction (3d Ed.), p. 477; and 50 Am Jur., Statutes, § 253. The intent of the legislature is to be ascertained from the language of the statute, if that language is plain and unambiguous. Kilduff v. Adams, Inc., 219 Conn. 314,336, 593 A.2d 478 (1991); State v. Gilbert, 30 Conn. App. 428,440, 620 A.2d 822 (1993). In addition, "words and phrases [used in a statute] shall be construed according to the commonly approved usage of language." General Statutes § 1-1(a). In construing a statute, it is usually appropriate to look at dictionary definitions in order to clarify the ordinary meaning of various terms. AirKaman, Inc. v. Groppo, 221 Conn. 751,756-57, 607 A.2d 410 (1992); State v. Domian, 35 Conn. App. 714,724, 646 A.2d 940 (1994); Young v. Marx, 24 Conn. App. 81, 84,585 A.2d 1253 (1991).
Section 54-1j provides that the court "advise" the defendant. General Statutes § 54-1j(a)-(c). The term "advise" CT Page 3326 means "to give advice to: Counsel . . . : Caution, Warn . . .: Recommend, . . . to give information or notice to: Inform, Appraise." Webster's. Third New International Dictionary (1976), p. 32. If, as Gordon argues, the legislature had intended to require the court to read the text of the warning to the defendant, it could have expressly used the term "read" or "recite" as opposed to "advise." "[W]here the wording [of a statute] is plain, courts will not speculate as to any supposed intention because the question . . . is not what the legislature actually intended, but what intention it expressed by the words that it used." (Internal quotation marks omitted.) Kilduff v.Adams, Inc., supra, 219 Conn. 336. Accordingly, we think that the plain language of the statute indicates that the court, at the very least, is required to inform or give notice to the defendant of the information quoted in subsection (a) of this statute.
Our conclusion is consistent with the construction other jurisdictions have applied to similar statutes. "Statutes of other states and the construction which has been placed upon them can be of little help in construing our statute, unless such statutes are in substantially the same language as ours."State v. Hughes, 3 Conn. Cir. 181, 195-96, 209 A.2d 189 (App. Sess.), cert. denied 152 Conn. 745, 209 A.2d 189 (1965); see also State v. Lanyon, 83 Conn. 449, 451-52, 76 A. 1095 (1910). The text of General Statutes § 54-1j was possibly adopted from the text of Massachusetts General Laws Annot., Ch. 278. § 29D, which was enacted four years prior to the enactment of General Statutes § 54-1j. Actually, General Statutes § 54-1j virtually tracks Massachusetts General Laws Annot. Ch. 278, § 29D. The Massachusetts statute also contains quotation marks enclosing the text of the warning.
The Massachusetts courts have held that "the purpose of the advisement set forth in its statute is to assure that a defendant knows that a plea of guilty may have an effect on his alien status." Commonwealth v. Lamrini, 27 Mass. App. 655,542 N.E.2d 293, 295 (Mass.App.Ct., 1989). In Lamrini, the trial court asked the defendant, an alien, if she was "aware of the possibility of being deported because of [the] charges [against her]." The defendant, there, argued that the judge's reference to "charges," as opposed to the term "conviction" used in the quoted text of the statute, constituted a violation of the statute. Id., 295. The court held that the canvass was sufficient for the purposes of the statute, noting that CT Page 3327
 [t]he critical issue [under c. 278, § 29D] is whether the defendant had been advised that her guilty plea may well have immigration consequences. "The exact language of the warning given by the court is not crucial." People v. Soriano, 194 Cal.App.3d [1470,] 1475, 240 Cal.Rptr. 328 [(1987)].
(Emphasis added.) Commonwealth v. Lamrini, supra, 542 N.E.2d 295. Although the court noted that "the better practice would have been for the judge to read directly from the statute the advisement contained therein," the court held that judge's comments were sufficient to advise the defendant of the effect of her plea on her immigration status. Id., 296.
California also has a statute similar to General Statutes § 54-1j, California Penal Code, § 1016.5, which provides in pertinent part:
 Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:
 If you are not a citizen, you are hearby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
Id. Although the California statute does not enclose the advisement in quotation marks, the text of the advisement is substantially the same as the text of General Statutes § 54-1j. The California Court of Appeals has held that
 the critical issue under the section 1016.5 is whether a defendant has been advised that his guilty plea may have immigration consequences. The exact language of the warning given by the court is not crucial. Thus, a defendant who was warned of the possibility that he might be excluded from residency, denied naturalization or the right to reenter but who was not specifically CT Page 3328 warned of deportation was adequately advised. (People v. Valenciano, (1985) 165 Cal.App.3d 604, 605-06, 211 Cal.Rptr. 651.)
People v. Soriano, 194 Cal.App.3d 1470, 240 Cal.Rptr. 328,331-32 (Cal.App. 1987). In People v. Valenciano, supra,211 Cal.Rptr. 651, the defendant was advised as follows: "If you are an alien, this plea could cause you to be excluded from the United States — residency — denied naturalization, or denied the right to reenter the United States." Id., 652. The defendant was subjected to deportation proceedings, and petitioned the court to set aside the judgment, arguing that the word "deportation," as referred to in § 1016.5, was not utilized by the trial court in the admonition he received during his plea hearing. The appellate court disagreed with the defendant's argument, noting that the "admonition clearly constituted `an appropriate warning of the special consequences which may result from the plea.' (Pen. Code § 1016.5, subd. (d) . . ." (Additional citations omitted.) People v. Valenciano, supra, 211 Cal.Rptr. 652.
General Statutes § 54-1j is substantially similar to Mass. Gen. L. Annot., Ch. 278, § 29D and Cal. Pen. Code, § 1016.5. Accordingly, we think that under General Statutes § 54-1j, the precise warning need not be given, provided the actual warning received by the defendant adequately advises him that his guilty plea could have consequences on his immigration status. Peoplev. Soriano, 194 Cal.App.3d 1470, 240 Cal.Rptr. 328, 331-32
(Cal.App. 1987); People v. Valenciano, 165 Cal.App.3d 604,605-06, 211 Cal.Rptr. 651. (Cal.App. 1985); Commonwealth v.Lamrini, 27 Mass. App. 655, 542 N.E.2d 293, 295
(Mass.App.Ct., 1989).
Substantial Compliance
Donovan Gordon also argues that, even if the court is not required to recite verbatim the quoted warning in the statute, what was provided by Judge Lavery in the present case failed to "convey the full scope of the technical meaning of the term `exclusion from the United States.'" (Defendant's Brief, p. 5.) Therefore, Gordon contends that the warning given failed to comply with the requirements of General Statutes § 54-1j(c).
Gordon's argument relies primarily on the technical distinctions between deportation and exclusion — as provided by CT Page 33298 U.S.C. § 1252, 1253 and 8 U.S.C. § 1225, 1226, 1227, respectively — recognized under the federal immigration statutes. As the defendant argues, exclusion proceedings provide fewer protections than deportation, and the trial court, by failing to use the term "exclusion from admission to the United States" as provided by General Statutes § 54-1j, did not advise the defendant of these precise and technical distinctions between deportation and exclusion. Gordon contends that these distinctions are not readily apparent without a detailed statutory analysis of the intricacies of the immigration laws.
The statute, however, does not require the court to advise the defendant on the technicalities of the immigration law, but rather that his plea of guilty could have the enumerated consequences on his immigration status. Thus the court's warning to the defendant that he was "subject to deportation, refusal of readmission to the United States" and "that any type of citizenship that [he] wish[ed] to get in the United States [wa]s in jeopardy" — which the defendant admittedly understood — adequately provided Gordon with the warnings required by General Statutes § 54-1j. See People v. Valenciano, supra, 211 Cal.Rptr. 652. The court's warning to Gordon that he could be subject to the refusal of readmission, although not encompassing all technical aspects of the formal exclusion proceedings under8 U.S.C. § 1225, 1226, 1227, when considered in conjunction with the rest of the warning, adequately alerted him that his guilty plea could result in deportation from the country, exclusion of admission into the country, or denial of naturalization, as required by General Statutes § 54-1j.
Donovan Gordon's Motion to Vacate Judgment and forPermission to Withdraw Plea of Guilty, dated January 31, 1995, is denied.
So ordered. CT Page 3330