[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint, which complaint was dated July 18, 2001 and returnable August 14, 2001, and in which complaint the plaintiff petitioner wife requested a dissolution of the marriage, joint legal custody of the minor child with primary residence to the plaintiff pendente lite, joint legal custody of the minor child with primary residence to the plaintiff, reasonable rights of access to the defendant pendente lite, reasonable rights of access to the defendant, support of the minor child pendente lite, support of the minor child, exclusive possession of the family automobile pendente lite, exclusive possession of the family residence pendente lite, exclusive possession of the family residence, a fair and equitable property settlement and such other and further relief as the court may deem equitable.
The usual automatic orders accompanied the complaint and also attached to the complaint was a motion for joint legal custody, reasonable access to the defendant, exclusive possession of the family automobile and matters of like nature.
An agreement incident thereto was accepted by the court, Dubay, J., on October 1, 2001.
The return of the state marshal also accompanied the papers.
On July 25, 2001, the defendant appeared by counsel.
On August 14, 2001, the defendant filed a motion for personal property pendente lite, an allocation of debt pendente lite and filed an answer to the complaint and a cross complaint and in the cross complaint requested a dissolution of the marriage, joint legal custody of the minor child, a fair and equitable property settlement and such other equitable relief as may be appropriate.
The agreement accepted by the court, dated October 1, 2001, provided for pendente lite joint legal custody of the one minor child, the CT Page 3466 provision of child support pendente lite of $125.00 a week and matters relating to daycare or nursery school expenses, matters pertaining to the lease payments of the plaintiff's automobile, the continuation of medical coverage by the defendant to cover the plaintiff wife and other matters of insurance. In addition, that agreement provided for the relief of portions of the automatic orders so that the plaintiff might undertake to refinance the outstanding mortgage on the home and residence at 18 Pepperbox Road in Waterford.
The plaintiff filed a financial affidavit on October 1, 2001, as did the defendant.
An agreement between the parties as concerns the defendant providing certain information pursuant to discovery was accepted by the court, Devine, J., on November 26, 2001.
An amendment to the complaint was filed by the plaintiff on February 21, 2002, in which amendment, in addition to the relief earlier requested, the plaintiff petitioner requested alimony.
On February 28, 2002 and on March 1, 2002, the plaintiff and the defendant with their respective counsel and witnesses appeared before the court and the matter was heard to a conclusion. Note: At the request of the court, counsel appeared on March 14, 2002 to explain, modify or correct the guideline worksheets as to support earlier filed.
The court makes the following findings of fact:
The plaintiff, whose maiden name was Kathleen Savard, was joined in marriage to the defendant on June 21, 1996 in the Town of Waterford. Both the plaintiff and the defendant have resided in this state for more than one year prior to the initiation of the proceedings.
The marriage has irretrievably broken down with no reasonable prospect for reconciliation.
There is one minor child issue of this marital relationship whose name is Griffen M. Archambault. The child was born on September 19, 1996.
Neither party is now nor have they been in the past the recipient of public assistance or welfare from either the State, or any town, city or municipality or subdivision thereof
No other children have been born to the plaintiff wife since the date of the marriage of the parties. CT Page 3467
Plaintiff was born on October 31, 1958 in New London and in terms of her formal education has an associate's degree in liberal arts. The plaintiff is employed as a graphic artist and has been involved in that field for the last nine or ten years. She is presently employed at TheNew London Day, a newspaper in the county, and works on average 20 hours a week. At an earlier point in time, she worked as many as 30 hours a week at her calling. The plaintiff described her health as being fine.
The parties met in November of 1995.
The plaintiff, who had previously been married, was divorced in 1989; that earlier marital union having lasted from 1979 through 1989.
There were four children issue of the plaintiff's first marriage. At least some of the children are now still under the age of 18.
The initial contact between the plaintiff and the defendant was through a friendship that developed by one of her children issue of her first marriage who were involved in sports.
The plaintiff described the relationship between the parties as being initially a good relationship. The courtship of the parties lasted for a period of about nine months. In March of 1996 the defendant moved into the residence of the plaintiff and resided there.
At that time, according to the testimony, the defendant had a home in the Quaker Hill area which he retained.
At the time of the plaintiff's dissolution of her first marriage, there was apparently an obligation whereby she was required to pay to her former spouse the sum of $27,000.00 and, in due course, the plaintiff paid off and discharged that obligation. The payment and discharge of this obligation was made possible in part by the help given to her by her parent father.
In paying off the obligation to her first husband, the plaintiff for a period of time was making monthly payments of $205.00.
The plaintiff has lived in her present residence and home for a period of 12 years, which of course preceded the date of the instant marriage.
At the time of the joining of the parties in marriage, the defendant had a nine year old son issue of a prior marriage.
It appeared from the testimony that the plaintiff was the primary caretaker with regard to the children that were in the home; both hers CT Page 3468 and the one child of the defendant. The plaintiff did housework and matters of like nature. The children mingled, one with the other.
The defendant's hours were various and oftentimes long.
The plaintiff's simple enjoyments were taking walks, attending baseball games and visiting the beach.
At the time that the parties were joined in marriage, it appears that the defendant objected to the plaintiff's parents being at the ceremony; however, they apparently subsequently attended a party.
The plaintiff described the marriage as being hard.
The defendant voiced a variety of complaints as concerns the plaintiff's conduct. Days would go by where neither party would speak one to the other.
According to the plaintiff, the defendant was critical of her and her children and according to the plaintiff, the defendant had no good word for her.
During the first year of the marriage, the plaintiff worked at Home Depot and assisted the defendant in his business which was known as The Carpet Man.
According to the testimony, the defendant was unhappy that the plaintiff did not offer more help and assistance in the conduct of his business.
The plaintiff characterized the defendant as being continually unhappy and that she was unable to please the defendant. There were apparently occasions when the defendant would leave the home for several days and then return.
The plaintiff acknowledges the importance of the defendant seeing the minor child Griffen.
Three years ago the parties traveled to South Carolina on a vacation. According to the plaintiff, the defendant was extremely moody and unhappy and that he would only speak to her or address her if the parties were in public. The plaintiff sought counseling.
The parties engaged in some joint counseling. Apparently three years ago there was a discussion with regard to the possible dissolution of the marriage. CT Page 3469
Prior to Christmas in the year 2000, the defendant moved out but subsequently returned.
The plaintiff indicated that her relationship with her four children was good. One of the older children issue of her first marriage is now in the process of becoming an electrician. The other oldest child issue of her first marriage is in college.
On the occasion of the plaintiff's 40th birthday party, the defendant left the party apparently being unhappy with the plaintiff dancing with others and left her to her own devices in terms of getting home.
The plaintiff's lament is to the effect that the defendant is verbally cruel to her and that she was never able to do anything that satisfied him in terms of her conduct.
According to the plaintiff, the defendant's business involves the selling and installation of carpeting and allied matters and at one point in time he had three or four employees.
Although the matter is somewhat unclear, it appears that in March of the year 2000 the defendant's parents sold their home in which apparently the defendant had some fractional interest and received a certain sum. The plaintiff's position being to the effect that the parents of the defendant hold certain monies on his behalf.
There was testimony with regard to the nature of improvements on the home residence undertaken or paid for by the defendant, including monies paid for the installation or correction of a septic system amounting to $3,500.00.
According to the plaintiff, in June of 1999, she took out an equity loan on the home in order to provide to the defendant the sum necessary to pay for that project.
The home in which the parties resided would appear to be in the sole name of the plaintiff and the outstanding mortgage debt and obligation is in the plaintiff's name solely as well.
There were certain appraisals made as concerns the home property, which the court will touch on in due course.
The plaintiff's valuation of the home and residence as a lay homeowner was to the effect that the property should be valued at $247,000.00. CT Page 3470
According to the testimony, the plaintiff and defendant agree that there should be joint legal custody of the minor child Griffen with the plaintiff being the primary residential and custodial parent. Visitation prior to trial has been predicated on a reasonable basis and the court will touch on the defendant's present request as concerns specific visitation in due course. The plaintiff feels that the present visitation schedule is adequate and is working well.
The defendant has been paying weekly child support for the one minor child in the amount of $125.00 and is current in all respects.
The plaintiff some time ago took out a loan to purchase a 2000 Mazda automobile.
During the good weather months, in addition to her work as a graphic artist, the plaintiff has worked in food industry matters at the Harkness Pavilion in Waterford.
The plaintiff makes a request for a contribution towards her attorney's fees, requests that the child support continue at its present level and requested alimony of $100.00 a week for a term of three years.
The evidence indicated that the plaintiff's hourly rate at The New London Day is $14.90. Recently, apparently, a full-time position was available at The New London Day. The plaintiff, however, did not apply for the same. Apparently medical coverage would have been available to the plaintiff if she had embarked upon becoming a full-time employee.
The child Griffen is in nursery school three days a week for a total of nine hours. The child Griffen is in daycare ten hours a week.
The present residences of the plaintiff and the defendant are fairly close to each other.
When the opportunity exists for the plaintiff to work at the food service job in the summer, her hourly rate is $12.00.
While the parties were living together and prior to the initiation of the petition for dissolution, according to the testimony, there were some months where the defendant gave the plaintiff as much as $2,000.00.
The plaintiff's testimony was to the effect that the defendant's business had substantial value.
The plaintiff's lament is to the effect that the fault for the breakdown of the marriage should be laid at the door of the defendant. CT Page 3471
The plaintiff testified that on one occasion she told the defendant that if he was unhappy in the relationship that he would be at liberty to move out.
The plaintiff felt angry as concerns the manner in which the defendant treated her. The plaintiff acknowledged that the defendant did go to marriage counseling five or six times but that the counseling was not successful.
The plaintiff indicated that the claimed improvements to the home and residence by the defendant were not requested nor solicited by her.
The testimony indicated that there were some occasions during the marriage where the defendant did assist in making some of the mortgage payments or a portion thereof
It is the plaintiff's position that she should not be obligated to recompense the defendant for any of his claimed improvements which apparently consisted of the installation of a driveway, which cost in the neighborhood of $4,000.00, certain front porch work, the erection and installation of a shed in the back of the home premises and carpeting work, which the defendant did in the home and residence which would appear to be substantial.
As earlier noted, the plaintiff's testimony was to the effect that she paid the $3,700.00 for the correction of the septic system problems.
The plaintiff acknowledged that the defendant on one occasion bought a refrigerator through his business which was placed in the home, and that the defendant replaced the hot water heater in the home.
The monthly mortgage payments now being made by the plaintiff are in the amount of $690.17.
Currently, the plaintiff receives support payments from her first husband in the amount of $178.00 a week and, in addition thereto, of course the outstanding order of $125.00 as concerns the minor child Griffen.
The court accepted a witness out of sequence at the request of the parties and from the testimony of Jay Michael Purcell of Rocky Hill, the court finds that Mr. Purcell is a certified public accountant; he has a bachelor's degree in accounting; he has done work in taxation. He has engaged for nine years in doing valuation work and has been working for over 30 years in his field. He has testified on prior occasions in court CT Page 3472 on as many as 20 occasions. Mr. Purcell indicated that he was being paid for his appearance in court.
This witness valued the defendant's business known as The Carpet Man as between $32,000.00 and $54,500.00.
Returning to the testimony of the plaintiff, the plaintiff has indicated that she has no wish nor present inclination to sell her home or residence nor does she have any wish to try to purchase the defendant's business.
The testimony was to the effect that on one occasion the plaintiff had put the home property on the market or exposed it for sale and that the asking price according to the testimony was $300,000.00.
During the period of November 2001 to the present, the testimony was to the effect that there was one instance of intimacy between the parties.
The plaintiff's testimony was to the effect that she endeavors to stay at home as much as possible mindful of the number of children that she is required to care for.
On inquiry of the plaintiff by the court, it was determined that the present marriage is five years plus duration; that the plaintiff's age is 43; her health is good; this was her second marriage; her education extended through securing an associate's degree which was secured in 1994 and, as noted, her employment is that of a graphic artist for The New London Day. The plaintiff had four children issue of her first marriage whose present ages are 22, 20, 18 and 16. The 18 and 16 year old children are both in school. Presently the plaintiff receives support solely for the 16 year old child.
The plaintiff acknowledged that during this marital union that there were no instances of physical violence inflicted on her person; that there were no problems with regard to the immoderate use of alcohol.
The plaintiff claimed that the defendant told her that on occasion he had resorted to a mild type of substance abuse. This was stoutly denied by the defendant. The plaintiff testified that she had no reason to believe that there were any infidelities between the parties and characterized the principal causes of the breakdown as verbal abuse, mental cruelty and some profanities addressed to her.
The defendant's son by a prior marriage is now age 15.
The home and real estate of the parties at 18 Pepperbox Road in CT Page 3473 Waterford was in the name of the plaintiff when the parties were married, as was the then existing mortgage which was solely in the name of the plaintiff
There was a period of time when a home equity loan was taken out for $25,000.00 on which the plaintiff was the principal obligor and the defendant was apparently a guarantor of payment; having in mind that he, according to the testimony, has never been an owner of record as concerns the Pepperbox Road property.
The defendant is no longer liable on any debt or obligation to the bank or lending institution incident to the Pepperbox Road property; the plaintiff having refinanced so as to relieve the defendant of any liability incident thereto.
The plaintiff represented that the defendant had made a voluntary disclosure to her of a mild substance abuse problem.
It appears that the parties have lived separate and apart for more than the last year and it is the plaintiff's claim that the defendant's parents hold certain funds on his behalf
According to the defendant, the problems in the marriage have existed from the inception thereof
The defendant acknowledged paying the current support order of $125.00 a week for the minor child Griffen. In addition thereto, indicated that he pays $155.00 monthly with regard to obligations incident to his first marriage. The defendant provides medical coverage for the minor child Griffen.
As concerns the recent refinance with the Pepperbox Road property, the representation was to the effect that the plaintiff's father became a co-signer to the lending institution because the defendant's credit was not sufficient.
The business in which the defendant engages is known as The Carpet Man. This was established during the marriage.
There was a claim that all of the income or proceeds incident thereto were not always properly reflected in the books or account records.
The monthly cost for COBRA coverage to the defendant, according to his testimony, is $270.00.
During the life of the marriage, it is the defendant's position that he CT Page 3474 gave the plaintiff between $1,000.00 and $1,200.00 monthly to pay bills.
In March of 2000, the defendant and his parents sold certain property, which was the former residence of the defendant, which property was, according to the testimony, the subject of a foreclosure action. The defendant represents that he received nothing out of the 66 Old Colchester Road, Quaker Hill, Waterford property and that there were a variety of obligations including obligations to the Internal Revenue Service which ate up anything to which he might have been entitled.
The defendant indicated that when the 66 Old Colchester Road, Quaker Hill, Waterford property was sold that he received nothing.
The defendant indicated that he was not seeking a reduction in the support payments that he is presently making for his minor son Griffen if the opportunity is provided to him for greater visitation or overnights. The defendant wants more time with the child to participate in sports and requests the opportunity to see the child on Wednesday and every other weekend.
The defendant denied being verbally abusive to the plaintiff and complained that the plaintiff was always too busy to reasonably discuss their differences.
The parties apparently counseled with five separate counselors.
The defendant's lament was to the effect that the plaintiff controlled the conduct and atmosphere in the home and residence.
Incident to his work as The Carpet Man, at one point in time the defendant did a wide variety of matters for the East Lyme School system. He testified that presently he has no employees and that the business that he conducts and operates is not the subject of a trade-name certificate being filed.
The defendant requests a recognition of what he contributed or put into improvements on the Pepperbox residence.
The shed which is situated on the Pepperbox property was apparently built by the defendant and allegedly cost $2,500.00.
The defendant's claim was to the effect that he did major carpeting in the home owned by the plaintiff. The value thereof being $3,800.00. In addition, the defendant claimed that he did painting and finishing work on the home. CT Page 3475
As concerns the Old Colchester Road property, the defendant's testimony was to the effect that the sum of $55,000.00 was paid to the Internal Revenue Service with regard to tax delinquencies and allied problems.
The defendant represented that his parents did not owe him anything at all. As indicated, the defendant represented that on occasion he paid a portion of the plaintiff's car payments and provided the aforementioned health insurance which cost $270.00 a month.
The defendant indicated that he made no claim for alimony from the plaintiff
The defendant's claim was in part that the plaintiff had represented to him that at some point in time his name would be put upon a deed for recordation on the land records.
According to his testimony, on one occasion the parties were fairly close to reconciling.
The defendant removed himself from the premises in January of 2001.
In his requests, the defendant asks for a stated schedule of visitation instead of just reasonable rights of visitation.
The defendant's request with regard to the value of the improvements to the plaintiff's property was to the effect that it was worth $35,000.00.
In response to questions put to the defendant by the court, he verified that the marriage was of five years plus duration; that it was the second marital union for both; the defendant's age is 37; he characterized his health as excellent; his education extended through the 12th grade.
The defendant has been a carpet installer in the trade for 19 years.
The defendant's one child issue of his first marriage is now age 15.
The defendant indicated that there were no problems of physical violence in the marriage; there was no problems with regard to the immoderate use of alcohol; no claimed infidelities and acknowledged that he is under no obligation to any lender or creditor with regard to the premises known as 18 Pepperbox Road.
The defendant acknowledged at one time having an interest in the real estate known as 66 Old Colchester Road but indicated that it was extinguished in the payment obligations and liens due to the Internal Revenue Service. CT Page 3476
The defendant presently resides at 6 Anita Avenue in Waterford; the same is a small cottage. The rent is $1,000.00 a month. A substantial period of the time the defendant's minor son age 15 named Ryan shares that residence.
The defendant characterized the failure of the union as one being an inability of the parties to compromise the difficulties between them. The defendant represented that he did not engage in any profanities insofar as the plaintiff was concerned.
The defendant's claims for recognition of the work that he did to the property as aforementioned include correction of the septic system, the paving of a driveway, the installation of a deck, certain electrical work, erection of a shed, carpeting in a number of rooms in the residence where the material cost was $1,900.00.
The defendant indicated that he had been making payments on the plaintiff's automobile but that the last payment has been made and that therefore that obligation has been paid and discharged.
During the pendency of these proceedings, no pendente lite order had been entered with regard to alimony.
The defendant, in addition to the foregoing, also claimed that he did certain landscaping work; characterized his conduct and attitude as being easy going; he claimed that he was mild mannered; he engages in coaching children in various sport activities including baseball and wrestling.
From the respective financial affidavits of the parties and the exhibits, the court finds, that according to the financial affidavit of the plaintiff, she is in fact employed as a graphic artist with The Day Publishing Co. Her gross weekly wage is $298.00; deductions, $48.52. Additional income existing support as concerns the minor child Griffen of $125.00 and in addition $178.00 support from the plaintiff's first husband for the remaining minor child issue of that relationship. Total net income, $552.88. Weekly expenses, $554.02; stated total debt, Visa and Charter Oak Federal Credit Union, $10,900.00. The plaintiff values 18 Pepperbox Road in Waterford at $245,000.00; a mortgage of $100,000.00 for an equity of $145,000.00. A Mazda automobile, year 2000, valued at $11,000.00 with an equity of $800.00. Furnishings, $2,200.00; savings and checking, Charter Oak Federal Credit Union, $3,900.00. Pfizer stock, $2,680.00, Cytogen, $225.00, Metropolitan Life mutual fund, $528.00 for a total of $3,433.00. The 401K at her place of employment, $2,731.00. Total cash value of all assets, of which the equity in the real estate is the principal factor, $158,064.00. CT Page 3477
See Plaintiff's Exhibit 3. This is a detailed appraisal of property located at 18 Pepperbox Road in Waterford done by Flanagan Associates for the Chelsea Groton Savings Bank. The appraisal was done as of October 9, 2001. The appraisal appears to be comprehensive and detailed and values the property on a comparison approach at $256,000.00.
Plaintiff's Exhibit 4; a statement from Pequot Properties purporting to be a market analysis of premises known as 18 Pepperbox Road, Waterford suggesting a price of $245,000.00 if the property were to be put on the market.
Plaintiff's Exhibit 5; another market analysis done by an organization known as Realty Pros dated August 9, 2001 indicating a suggested listing price of $249,900.00 in "as is" condition. This alleged market analysis is bereft of any meaningful information that would entitle the figure to credit.
Plaintiff's Exhibit 6; a quitclaim deed from Roy J. Archambault to himself and Leo J. Archambault and Mary P. T. Archambault, his parents, dated June 27, 1995 and recorded with the town clerk in Waterford in Volume 510 at page 0373.
Plaintiff's Exhibit 7; a warranty deed survivorship from Roy J. Archambault, Leo J. Archambault and Mary P. T. Archambault conveying the subject premises in consideration of the sum of $144,900.00 to Donna M. Reeves and Jean H. Reeves of Westbrook; the same is dated March 14, 2000 and recorded in the Waterford Land Records, Volume 510 at page 0380.
Plaintiff's Exhibit 8; a document entitled "The Carpet Man Valuation Analysis" done by the witness Jay Michael Purcell, CPA, estimating the value of the business at between $32,000.00 and $54,500.00.
Plaintiff's Exhibit 9; federal income tax return for the year 2001 filed by Roy J. Archambault indicating total income for the tax payer to be $24,404.00. The gross receipts from the business known as The Carpet Man on Schedule C for the year 2001 was $105,771.00. The net profit appears to be $24,399.00.
Plaintiff's Exhibit 10; federal income tax return for the plaintiff and the defendant for the year 2000. Total income reflected on that return, $58,467.00. Gross receipts from the defendant's business as shown on the year 2000 return, $154,841.00.
Plaintiff's Exhibit 11; federal income tax return for the year 1999 for the plaintiff and the defendant. Total income reflected on that joint CT Page 3478 return, $52,144.00. Schedule C attached to that subject return indicated gross receipts from the business known as The Carpet Man, $194,534.00.
Plaintiff's Exhibit 12; federal income tax return for the year 1998 for the plaintiff and the defendant. Total income reflected on the face of that return, $48,619.00. From Schedule C, gross income from the business known as The Carpet Man for that year, $175,695.00.
Plaintiff's Exhibit 13; a permit to repair a sewage disposal system at 18 Pepperbox Road, estimated cost, $1,200.00 issued by the Town of Waterford.
Plaintiff's Exhibit 14; building permit from the Town of Waterford with regard to the erection of an 8' x 12' shed; estimated cost, $960.00.
Plaintiff's Exhibit 15; W-2s concerning income of the plaintiff from the Gourmet Gallery Catering Service, an entity known as A Thyme to Cook, Inc., Aramark Food Supplies and Services and The Day Publishing Co.
Plaintiff's Exhibit 16; an affidavit of debt filed by the plaintiff's counsel asking for a contribution as concerns counsel fees.
Plaintiff's Exhibit 17, Plaintiff's Exhibit 18 and Plaintiff's Exhibit 19 having to do with photocopies of checks, portions of which are not clearly legible, as concerns monies spent or obligations paid for by the plaintiff as concerns the septic system, a refrigerator and allied items.
Plaintiff's Exhibit 21; the retail installment contract as concerns the purchase by the defendant of a 1998 Jeep showing the purchase price, financing charges and costs and related matters.
Plaintiff's Exhibit 22 is in the similar vein with regard to financial data provided to the seller of the Jeep automobile, Falvey's Dealership.
Plaintiff's Exhibit 23; copy of settlement statement between Roy J. Archambault, Leo J. Archambault and Mary P. T. Archambault incident to the sale of that property; the selling price as concerns the premises known as 66 Old Colchester Road, Quaker Hill, Waterford being $144,900.00; net to sellers, apparently $62,882.54. The said sum, according to the testimony, to be used to pay off obligations to the Internal Revenue Service.
See Defendant's Exhibit 3; a collection of countless invoices and statements including many from the Home Depot and various and sundry parties invoiced to The Carpet Man or to the defendant incident to his CT Page 3479 claims as concerns contributions to the former home and residence of the parties. Many of the invoices are for extremely small amounts. The exhibit includes an invoice indicating that the defendant paid $2,000.00 to an entity that provided gravel and stone incident to the installation of a driveway.
Defendant's Exhibit 4; a document entitled "Market Analysis" prepared for the defendant as concerns the subject property, 18 Pepperbox Road. The exhibit includes countless sheets with photographs attached thereto showing a variety of premises and various and sundry locations but does not by virtue of the use thereof attribute any particular value to 18 Pepperbox Road. It does not materially assist the court in arriving at a proper figure as to the valuation thereof.
Defendant's Exhibit 5; an appraisal report concerning property known as 18 Pepperbox Road in Waterford; date of report June 6, 1996, in which report done by Silverstein Appraisal the subject premises are valued at a total of $175,000.00.
Defendant's Exhibit 6; an appraisal report as concerns 18 Pepperbox Road, Waterford done by Silverstein as of February 14, 2002 and valuing the subject premises as of that date at $275,000.00.
According to that appraisal, the present assessment of the subject premises is to the amount of $89,820.00.
Defendant's Exhibit 7; a document entitled "Earnings Statements" from the plaintiff's employer indicating her hourly rate and gross weekly pay to the amount of $298.40; net, $249.80.
Defendant's Exhibit 8; a statement from the plaintiff's part-time employer known as A Thyme to Cook, Inc., indicating her regular earnings to be to the amount of $231.00 a week during that portion of the year during which she is employed.
Defendant's Exhibit 9; a photocopy of Citizen's Bank promissory note wherein the borrowers were Kathleen Archambault and Andre J. Savard, her father; amount loan, $25,000.00; the date of the note is June 3, 1999 and the exhibit indicates that the same has been paid and discharged as of June 7, 2001.
Defendant's Exhibit 10 is a handwritten document entitled in part, "Reasons to Stay/Reasons to Move." The court is not inclined to dwell overly long on the exhibit.
Defendant's Exhibit 11; a handwritten document purporting to itemize CT Page 3480 the home improvements which the defendant has made as to the premises of the plaintiff; the same totaling $25,575.00.
The defendant's financial affidavit reflects his occupation as being a rug installer; weekly gross, $493.00; deductions including his child support obligation for a net of $200.00. Weekly expenses, $634.00; debt, $3,000.00. The defendant values the 18 Pepperbox Road, Waterford property at $275,000.00 with a mortgage of $100,000.00 for an equity of $175,000.00; manifestly of course the title of record stands solely in the name of the plaintiff
The defendant values the 1998 Jeep Cherokee automobile at $17,000.00 with a loan balance in the same amount.
Miscellaneous household furnishings, $4,500.00; a certain Kawasaki vehicle valued at $1,500.00; $100.00 in the bank; an entity known as Seachange International valued at $500.00; $500.00 for cash value of life insurance; a 1999 Chevrolet Express Van for his business and carpeting tools valued at $9,000.00. The value ascribed to the tools, however, is only $1,000.00.
 Discussion
This marital union is the second marriage for each of the parties.
The plaintiff has four children issue of her first marriage. The defendant has one child issue of the first marriage.
The plaintiff's age is 43; the defendant's age is 37.
The plaintiff's health was described as good; the defendant's health was described as excellent.
The plaintiff has an associate's degree from college; the defendant's education extended through completing high school.
There were manifestly no instances of physical violence, no abuse of alcohol; query as to any possible substance abuse, the issue is not clearly defined and the parties are clearly at issue on that point and the court is inclined to the view that no serious problem in that respect could have existed mindful of the overall nature of the testimony.
The breakdown of the marriage presumably was caused by what the parties characterized as verbal abuse or mental abuse and a failure of the parties to be able to compromise their differences and work problems out. CT Page 3481
The plaintiff has continued for a long period of time with her principal employment being that of a graphic artist for The New London Day. The defendant for a considerable period of time has conducted the business known as The Carpet Man, the installation of carpeting in residential and commercial purposes.
The former home of the parties has always been in the plaintiff's name; the only occasion on which the defendant was obligated was as a guarantor of payment and not an owner of record.
The defendant's position, however, has manifestly been improved by virtue of the refinance which has removed any liability that he might have had on the home equity loan.
The duration of the marriage, as noted, is somewhat over five years in duration.
The court is concerned with several issues presented incident to the dissolution of this marital union and the respective assets of the parties.
The court is concerned with regard to the claim by the plaintiff that the defendant's parents are holding funds that belong legally or equitably to the defendant. The testimony generally was to the effect that the defendant received no proceeds as concerns the sale of the Quaker Hill home, which he had prior to this present marital union, and that whatever he might have been entitled to has gone to the Internal Revenue Service. The court notes that the defendant's parents, who were represented to be, pertaining to the testimony and the exhibits, owners of the Quaker Hill property along with the defendant, were not called as witnesses in the proceedings and their testimony would have shed considerable light as to whether or not the defendant actually received anything or whether or not they presently hold any asset on his behalf
The court cannot go beyond the record and the exhibits and therefore feels obligated to rely upon the testimony of the defendant under oath that he received nothing as concerns that sale and that whatever he might have been entitled to went to the Internal Revenue Service.
Next the court has been concerned with regard to the claimed valuation by the expert presented as to the business known as The Carpet Man, which apparently is a sole proprietorship and not incorporated nor even a trade name certificate filed on the land records.
While the court is mindful of the gross receipts that are set forth on Plaintiff's Exhibit 8, according to the tax returns the net profits have CT Page 3482 been relatively modest. The court also notes that there is a claim on the face of the exhibits that not all of the receipts were reported. While the exhibit is helpful in part, the end result would appear to be that there is no substantial valuation included within the confines of Plaintiff's Exhibit 8 that would indicate that there is any substantial inventory of carpeting, allied materials and so forth. The business admittedly is a sole proprietorship. The testimony was to the effect that there are presently no employees and the tax returns reflect a relatively modest net income for the years for which the court was provided, copies of the returns as exhibits.
Also on the financial affidavit of the defendant, in the asset category, Category H, carpeting tools are valued at only $1,000.00. It would seem reasonable to treat the business known as The Carpet Man as an entity where the defendant was the sole spark plug of the business and that in "Inventory, Equipment or Tools" there are no assets of any substantial consequences and while some value might reasonably be allocated to good will, it still is very much a sole proprietorship dependent upon primarily the efforts expended by the defendant. The court is inclined to the view that the expert witness' testimony as to the estimate of the value as being between $32,000.00 and $54,500.00 is by and large not well supported.
The court is also concerned with the defendant's request as contained in the proposed orders for reimbursement of fairly substantial sums predicated on the alleged increased value of the home during the marital union of the parties. The defendant's claim through counsel is to the effect that the defendant should have the sum of $63,286.00 to be paid off at a periodic rate. Presumably during the life of the union and at least during that portion of time where the parties were relatively happy within the confines of the marriage, many of the activities that were undertaken were of a joint nature for the mutual benefit of both of the parties, while admittedly enhancing the value of the plaintiff's asset, but the court has already touched upon the fact that the plaintiff owned the property before the marriage. It is solely in her name now and one considerable factor that the court feels is entitled to weight was the refinance during the pendency of this petition by the plaintiff so that the defendant is relieved of any and all liability insofar as his liability to any lender, whatever the extent thereof, where he presumably signed as a guarantor of payment.
For the defendant now to claim such a sum where he has in fact been relieved of a substantial liability, even as a guarantor of payment, presents some considerable question to the court.
In considering what value, if any, ought to be attributable to the CT Page 3483 business known as The Carpet Man, the court has considered Brash v.Brash, 22 Conn. App. 609 (1990), Dunleavy v. Dunleavy, Docket No. 1399053 Ct. Sup. Ct. 2000, Puris v. Puris,30 Conn. App. 433 (1993). The court has also considered Eslami v. Eslami, 218 Conn. 801 (1991).
 The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-82 regarding alimony, § 46b-62 regarding attorney's fees and §§ 46b-55, 46b-83, 46b-84 as concerns support.
The court has considered all of the applicable case law that governs the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issues presented, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties and the needs of the minor child.
The court has considered the standard of living of the parties.
The court has considered the situation that exists with regard to the children issue of the parties' prior marital unions.
The court has considered the respective financial positions of the plaintiff and the defendant.
The court has considered their prospects for future income and opportunities incident thereto.
The court has considered the issue of fault and the emotional problems incident thereto.
The court enters the following orders:
The parties shall share joint custody of the minor child Griffen, born September 19, 1996; the plaintiff mother to be the primary custodial residential parent.
The defendant shall have reasonable rights of access as agreed by the parties, but in any event, said reasonable rights of access shall include CT Page 3484 the defendant being entitled to have the child with him every other weekend from Friday evening at 6:00 p. m. until Sunday afternoon at 3:00 p.m. and one night during the week from 5:00 p.m. to 7:00 p.m. The parties shall alternate holidays on an annual reciprocal basis.
The court has been presented with widely divergent Child Guideline Worksheets, and the court had the parties come back before it on March 14, 2002 for the purpose of clarification thereof
The plaintiff's guideline worksheet would suggest a support order for the minor child to be borne by the defendant of $139.30 a week. On the other side of the coin, the defendant's guideline worksheet has a figure widely at variance with that to the amount of $47.00 a week. The court is inclined to the view that the plaintiff's guideline worksheet is the more accurate, but intends to deviate therefrom based on the overall aspects of the defendant's income from the business known as The Carpet Man and the reliability thereof and, in accordance with what is agreeable to the parties, the order of support will be $125.00 a week. The issue of earning potential has also been considered by the court.
In addition, the plaintiff mother shall be responsible for 44% of any uncovered medical or dental expenses and the defendant father, 56%.
The parties shall alternate claiming the minor child as an exemption on their tax returns and may be permitted to do so as long as terms and conditions of this order have been complied with and are current.
The defendant shall pay alimony to the plaintiff in the amount of $75.00 a week for a period of one year.
The plaintiff may retain her interest in the real estate known as 18 Pepperbox Road in the town of Waterford. The property is solely in her name at present and it may remain thus.
The plaintiff will hold the defendant harmless as concerns any possible claim against him as concerns said residence but the evidence is to the effect that he has already been relieved therefrom by virtue of the refinance.
The defendant shall receive as a property settlement from the plaintiff the sum of $10,000.00 for his contribution to improvements to the marital residence during the term of the marriage. This sum may be paid five years from date and may be secured by virtue of an encumbrance upon the land records. Said sum shall bear interest at the rate of 3% per year. Said sum of $10,000.00 to be earlier paid in the event that the home and residence is sold, or in the event of the plaintiff's remarriage or CT Page 3485 death, in which case it should be due and payable at that time.
The court sees no compelling reason why the defendant should of necessity share in the gradual appreciation of the real estate during the marriage. As noted, the property was in the name of the plaintiff when the parties were mated and the defendant, as noted, has been relieved of any liability to any lender due to the refinance. In addition, the plaintiff was obligated to pay her last husband to acquire the home. The evidence was not clear as concerns the defendant's claim that on occasion he contributed to paying the mortgage.
The evidence also indicated that at least as to one capital expenditure, the septic system, that the plaintiff gave the defendant the funds to pay for the same.
The defendant shall be entitled to retain his business known as The Carpet Man free and clear of any claim by the plaintiff. The defendant may retain any and all items of personalty related thereto including his tools.
The plaintiff may retain her 401K in the amount of $2,700.00 free of any claim from the defendant.
Any unresolved problems as concerns the division of personal property may be the subject of binding arbitration.
Each party may retain the motor vehicle presently in their possession and which vehicles presently stand registered in their respective names.
The plaintiff may retain the funds in the Charter Oak Federal Credit Union, both savings and checking, which allegedly are in the amount of $3,900.00.
The plaintiff may retain her stock interest in Pfizer, Cytogen and MetMutual Life which total $3,433.00.
The court has already noted that she may retain her 401K with The Day newspaper employer.
The defendant may retain any personal property presently in his possession.
He may retain the Kawasaki Quad vehicle, any funds he has in Charter Oak Federal Credit Union or People's Bank. He may retain his stock in Seachange International, any cash value attendant to his insurance with MetLife and the 1999 Chevrolet Express van used in his business, and his CT Page 3486 tools.
Until such time as the plaintiff is able to secure medical coverage for herself, the defendant shall cooperate in providing the plaintiff with COBRA coverage for a period of three years or until such time as the plaintiff has insurance of her own in place. The defendant shall be responsible for the cost incident thereto for the first year. For years two and three, the cost shall be attributable to the plaintiff the defendant cooperating, however, with regard to keeping the coverage in place. The defendant shall provide medical and dental coverage for the minor child Griffen.
Each party shall pay the debts reflected on their respective financial affidavits.
Each party shall be responsible for their own attorney's fees.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, J.